## ISAAC GAINES v. M. BROCKERHOFF ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 23, 1889—Decided June 2, 1890. .
Re-argument refused November 10, 1890.
[To be reported.]

1. Where a cause in equity is dependent upon oral testimony, it is the proper practice to refer it to a master for a report upon the facts; but the province of the master is merely ancillary, and his work is simply in aid of the court in the performance of its own functions: Phillips's App., 68 Pa. 130.

2. When, therefore, a master's report comes before the court upon exceptions thereto, so long after the taking of the testimony that the master could have little assistance from his recollection of the appearance and manner of the witnesses, it is not error for the court to find the facts from the testimony reported and enter a decree thereon: Herdic's App., 58 Pa. 212.

3. An agreement made between a debtor and his creditor that the latter will acquire title to the lands of the debtor by means of a sheriff's sale, and will hold them with the right in the debtor to redeem, may constitute the transaction a mortgage unaffected by § 4, act of April 22, 1856,

Statement of Facts.

P. L. 533: Harrison v. Soles, 6 Pa. 393; Rhines v. Baird, 41 Pa. 256; Saunders v. Gould, 134 Pa. 445.

4. Such an agreement, if established by sufficient evidence, carried out according to its terms by advances on the part of the creditor and acts to his injury on the part of the debtor on the faith thereof, is enforceable in equity against the creditor: Sweetzer's App., 71 Pa. 264, followed; Fox v. Heffner, 1 W. & S. 372; Jackman v. Ringland, 4 W. & S. 149, and Kimmel v. Smith, 117 Pa. 183, distinguished.

5. Grantees of the purchasing creditor, his widow and children, by a deed with but a nominal consideration, not describing the lands in dispute, and, by the testimony of one of the grantees, not intended to include them, have no better standing to contest the debtor's claim under the agreement than their grantor to whose rights they succeeded.

6. A parol defeasance, sufficiently proven, being the equivalent of a written one,* though a bill filed to enforce the debtor's rights averred that the agreement was in writing, but that established by the proofs was in parol, the variance was technical rather than substantial, and, if necessary, an amendment is permissible at any stage of the proceeding.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 12 January Term 1889, Sup. Ct.; court below, No. 4 January Term 1883, C. P. in Equity.

On September 28, 1883, Isaac Gaines filed a bill in equity against Margaret Brockerhoff, widow, Andrew J., Henry W., and Joseph M. Brockerhoff, heirs, and Margaret Brockerhoff and Andrew J. Brockerhoff, administrators, of Henry Brockerhoff, deceased.

The bill averred, in substance, the financial embarrassment of the plaintiff in 1870, and threats of creditors to enforce their claims; that the plaintiff was then indebted to Henry Brockerhoff in the sum of $5,928.09 and interest from February 17, 1868, on a judgment entered in Clearfield and Centre counties, which was a first lien upon seven tracts of land, four in Clearfield and three in Centre county; that in October, 1870, to prevent a sacrifice of his property, the plaintiff entered into an agreement with Henry Brockerhoff, in writing, drawn by and left with Mr. William A. Wallace, to the effect that Brockerhoff would buy in all the plaintiff's property at sheriff's sale and hold it for the plaintiff's benefit, sell off parts thereof, and the timber, the money realized to be applied to Brockerhoff's

---

* See act of June 8, 1881, P. L. 84.

claim and expenses, and the latter, when reimbursed, to re-
convey such lands as remained unsold to the plaintiff; that said
Mr. Wallace did not have said agreement, but had made search
for it and could not find it, and therefore the plaintiff was un-
able to append a copy of it, but expected to prove its execution
and contents.    The bill then proceeded to aver that the agree-
ment was carried out in good faith, and in pursuance of it
Brockerhoff purchased plaintiff's property, real and personal,
at sheriff's sale, for an aggregate sum of $790 which was ap-
plied to his judgment; that after plaintiff's properties were so
purchased, he remained in possession, kept the personal pro-
perty and disposed of the same to his own use, and in Brock-
erhoff's lifetime the plaintiff had entire charge of the real
estate, and nothing was done pertaining thereto without his ap-
proval; that plaintiff had made sales of timber and of land, to
John Heise, to J. S. & A. O. Furst, and to David Price, and
had paid all the purchase money to Brockerhoff, and that the
money realized out of the property by Brockerhoff, in his life-
time, and by his representatives after his death, aggregated
$10,467.50; that by deed dated February 20, 1878, Henry
Brockerhoff conveyed to Mary C. Brockerhoff, for the consid-
eration of one dollar, all the lands owned by the grantors in
Pennsylvania whether specifically described or not, describing
thirteen tracts, however, but not the lands claimed by the
plaintiff; that by a trust deed dated February 21, 1878, Mary
C. Brockerhoff conveyed the same lands to Margaret Brocker-
hoff, widow, Andrew J. Brockerhoff and Henry W. Brocker-
hoff, sons of Henry Brockerhoff, in trust to receive the rents,
issues and profits for ten years, to apply the same or so much
as might be necessary to pay Henry Brockerhoff's debts, and
after payment of the same to divide the residue of the rents,
issues and profits equally between Margaret Brockerhoff, An-
drew J., Henry W., Joseph M. and Mary C. Brockerhoff, and
at the expiration of said ten years to sell said real estate and
divide the proceeds, etc.; that said Henry Brockerhoff had
died intestate without providing for a re-conveyance to the
plaintiff, who had fully performed the agreement referred to;
and that certain tracts remained unsold and were of the total
value of $40,000.    The prayers of the bill were: 1. For an in-
junction restraining the defendants from selling the lands de-

Master's Report.

scribed in the bill.   2. That the administrators of Henry Brock-
erhoff, deceased, be required to make a deed conveying said
lands to the plaintiff.   3. For an account.   4. For general re-
lief.   Before answer, the bill was amended, by leave of court,
so as to include an averment that defendants, before the death
of Henry Brockerhoff and before the making of the deed of
February 20, 1878, had notice of the agreement of October,
1870, and of the plaintiff's rights thereunder.

An answer having been filed, denying, inter alia, all the
averments of the bill as to the agreement of October, 1870, and
that Brockerhoff had purchased at the sheriff's sale under an
agreement to hold the property, or any of it, for the plaintiff's
benefit, either directly or indirectly, issue was joined; and, on
June 10, 1884, the cause was referred to *Mr. Joseph W. Par-
ker*, as examiner and master, who on February 27, 1888, filed
a report, in which he found certain facts and proceeded:

The master is of the opinion that the evidence fails to sup-
port the allegation of the bill as to the written contract, and he
consequently finds that it is not proved that it ever had an
existence.

It is contended, however, by plaintiff's counsel " that in
cases where parties reduce their contract to writing, the writ-
ing is not the contract itself, but merely the evidence of it;
the agreement is oral, and its terms are evidenced and perpet-
uated by the writing; and, if in this case the master should be
of opinion that the evidence is not sufficient to prove that
there was a written agreement between the parties creating an
express trust, complainant is still entitled to the relief prayed
for, if the evidence is such as to make out a case of implied or
resulting trust arising from a parol agreement and the conduct
of the parties thereto, the same as if said parol agreement and
resulting trust had been charged in the bill."

Section 4, act of April 22, 1856, provides: "That all declara-
tions or creations of trusts or confidences of lands, tenements,
and hereditaments, and all grants and assignments thereof shall
be manifested by writing, signed by the party holding the title
thereof, or by his last will in writing, or else to be void: Pro-
vided, That where any conveyance shall be made of any lands
or tenements by which a trust or confidence shall or may arise

or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed."

The statute recognizes two kinds of trusts: First, an express trust manifested by writing; and, second, an implied or resulting trust arising by implication of law. The Supreme Court has defined the latter to be "a trust raised only from fraud in obtaining the title, or from payment of the purchase-money when the title is acquired:" Barnet v. Dougherty, 32 Pa. 371.

"It is an elementary principle that the bill should state the right, title, or claim of the plaintiff with accuracy and clearness; in other words, there should be such certainty in the averment of the title upon which the bill is founded, that the defendant may be distinctly informed of the nature of the case which he is called upon to meet:" Story's Eq. Pl., § 241, p. 253.

In the bill under consideration, the plaintiff bases his claim for relief upon a written agreement. It does not charge fraud upon Brockerhoff in obtaining the title, or that payment of the purchase-money was made by Gaines. It asserts that the contract was carried out in good faith by the parties thereto. The plaintiff must stand or fall upon the averments of his bill; and, having failed to establish the written agreement as therein set forth, he cannot obtain recognition of an alleged unwritten agreement, imputing fraud to the defendant and seeking to convert him into a trustee ex maleficio. Such claims, it seems to us, are inconsistent with and repugnant to each other; and therefore, equity will not lend its aid to enforce in this proceeding the execution of the alleged resulting trust.

While it is no longer open to controversy that a deed absolute upon its face may be held to be a mortgage, and that this may be shown by oral testimony, yet we are of opinion that the plaintiff, having failed, as before stated, to maintain his allegation of a written agreement, cannot be permitted to fall back from the position taken in his bill, and set up a parol contract in the light of which it might appear that the parties sustained to each other the relation of mortgagor and mortgagee.

Opinion of Court below.

—The master, therefore, recommended a decree that the bill
be dismissed at the plaintiff's costs.

Exceptions filed by the plaintiff to the report of the master,
both as to his findings of fact and his conclusions of law, were
overruled by the master and renewed on the filing of his report.
After argument thereof, the court, KREBS, P. J., on July 12,
1888, filed an opinion which, in part, was as follows:

This case comes before the court on exceptions to the mas-
ter's report, for alleged errors both in law and in his failure to
report fully all the facts covered by the testimony taken before
him.    The length of time elapsing since the filing of the bill,
the importance of the cause, and the delay inevitably conse-
quent upon a reference to the master again, has impelled me to
find, at length, the facts as shown by the testimony, in order
that an end may be reached and the rights of the respective
parties ascertained and finally determined.

The master, having arrived at the conclusion that, as the
complainant had alleged in his bill that a written agreement was
made between himself and Henry Brockerhoff, since deceased,
and there was no sufficient proof of the existence of such writ-
ten agreement, proceeded to decree a dismissal of the bill, with-
out passing upon any of the other questions arising under the
complainant's offers of testimony.    The master's conclusions of
law and fact may be right; and yet the complainant is entitled
to have the whole of his case set forth in the report, in order
that delay may be avoided and the case disposed of upon one
hearing and not piecemeal.    In view of this, I have determined,
at the expense of much time and labor, to sift the evidence and
set out such facts as seem to me to be fully established, before
passing upon the questions of law involved in the master's
report and the case when considered in full.

—The court then proceeded with a finding of facts, inter alia,
as follows:

5. The lands described in paragraphs 1, 2, 3, 4, of the bill
were sold at sheriff's sale to Brockerhoff on January 13, 1871;
and those described in paragraphs 5, 6, 7, situate in Centre
county, were sold to Brockerhoff on December 5, 1870.    The
bids for all these lands in the aggregate amounted to $635.
The personal property of Gaines had also been sold on exe-

cution to Brockerhoff on November 3, 1870, for $155. All these lands, both in Clearfield and Centre counties, were sold upon writs of fieri facias issued upon the judgment of Brockerhoff; Gaines, the defendant therein, having waived inquisition.

6. The personal property was left with the complainant, Isaac Gaines, and at no time taken possession of by Mr. Brockerhoff; whether there was much or little personal property could only be ascertained by reference to the sheriff's levy and return of sale, neither of which is set out in detail by the master's notes of the testimony.

7. Henry Brockerhoff died on October 6, 1878, and letters of administration were issued to Margaret Brockerhoff, widow, and Andrew J. Brockerhoff, his eldest son.

8. At the time of the sheriff's sale of complainant's property, he was indebted, as shown by judgments entered of record, to an amount of nearly $2,500, in addition to the amount of the judgment held by Brockerhoff of $5,928.09 aforesaid, and writs were in the sheriff's hands on part thereof.

9. An arrangement or agreement was made between Mr. Brockerhoff and Isaac Gaines before the sheriff's sale was had, and some time prior, how long does not appear, that Mr. Brockerhoff would buy the property at sheriff's sale, and that upon repayment of the judgment of Brockerhoff and the moneys in that behalf expended by him, Gaines should have it again.

This being upon a vital point in the case I set out more particularly the reason or proofs in support of this finding:

(*a.*) Letter of Mr. Brockerhoff to Isaac Gaines, dated November 21, 1871, as follows:

"Mr. Isaac Gaines. Dear Sir. I wrote to Wallace & Fielding to send me the deeds of property of yours in Clearfield county, bought in for me as we have agreed upon. He sent me the following deeds: . . . . . I perceive that there is no deed for one hundred acres, which formed a part of your property in Karthaus, and which ought to have been sold along with the rest; will you please inform me how it came that the whole was not sold," etc.

(*b.*) Hon. W. A. Wallace testifies: I was attorney for Henry Brockerhoff some time in 1860 until some time in 1874 or 1875, etc. I and my firm had charge of his judgments and claims in this county for collection, including those against

Isaac Gaines. The property of Isaac Gaines, real and personal, was pressed to sale by his creditors including Mr. Brockerhoff, I think some time in 1871 or 1872. I think previous to the sale, I understood from the parties, both Mr. Brockerhoff and Mr. Gaines, that if Gaines paid the debt and costs with the expenses to Mr. Brockerhoff, he was to have the property returned. They were together in my office at one time, and discussed the subject. My impression was that it was after the sale, but I cannot fix the date. In the talk had in my office, the arrangement talked of before the sale was repeated, that is, if Isaac paid the debt the property was to be his again. I have no written paper that was signed by the parties at the time. I have searched in my office carefully, but cannot find it. My recollection is not distinct enough to say that there was any such paper either written or signed.

—Other testimony reported by the master, upon the subject of the agreement, was then considered, when the court proceeded:

10. Henry Brockerhoff and Margaret his wife conveyed, by deed dated February 20, 1878, in consideration of one dollar, to Mary C. Brockerhoff, his daughter, "all the messuages, tenements, and lands owned by the said Henry Brockerhoff and Margaret his wife, situate in the state of Pennsylvania, whether therein specifically described or not." This deed contains specific description of thirteen tracts, but does not specifically describe the lands in dispute or any of them.

11. Mary C. Brockerhoff, the grantee mentioned in preceding paragraph, by her deed dated February 21, 1878, conveyed to Margaret Brockerhoff, her mother, and to Andrew Brockerhoff and Henry W. Brockerhoff, her brothers, the same property (described exactly as in the deed to her), and to the survivors or survivor of them, the same lands, in consideration of one dollar, and upon certain express trusts, inter alia, to pay debts of Henry Brockerhoff, the father, etc.

12. At the time of the sheriff's sale of the property of Isaac Gaines, the complainant, for the sum of $635, it was reasonably worth from $12,000 to $15,000, in payments on reasonable time, and there is no evidence that any one was prevented or induced not to bid at the sale.

13. The complainant has at all times before and since the

sheriff's sale of the property described in paragraphs 1 and 2 of appendix to his bill, had the actual possession thereof, and no demand for rent or for money for the use thereof has ever been made upon him to the time of the filing of his bill; he has erected thereon valuable improvements, without objection from Mr. Brockerhoff, paying therefor himself; cut timber therefrom, to the extent at least of one small raft, and still continues in the use and enjoyment thereof.

14. The allegation in complainant's bill that the agreement with Henry Brockerhoff was in writing, is not sustained by sufficiently clear and precise proof, and is not sustained as a fact by these findings.

—The court followed with findings of fact as to sales of timber from the lands after their purchase by Brockerhoff at sheriff's sale; sales of land itself; and the conveyance by Gaines to Brockerhoff, or rather to Furst, Brockerhoff's vendee, in consideration of one dollar, of Gaines's interest in land for which Brockerhoff received $1,300, and which had not been sold to Brockerhoff at sheriff's sale, but was the land referred to in Brockerhoff's letter to Gaines dated November 21, 1871. The court then proceeded:

The complainant's counsel contended on the argument that the facts involved in the testimony prove that Mr. Brockerhoff is to be held liable to account either: 1. As a trustee ex maleficio; or, 2. Because the transaction is a parol mortgage.

Respondent's counsel contended that the bill must be dismissed for these reasons, namely: 1. Because the complainant alleged in the bill that the agreement was in writing, and he is thereby barred from recovering on a parol agreement. 2. That the contract alleged is against public policy and void, having been made to hinder, delay, and defraud his creditors. 3. Because the respondents are bona fide purchasers for value without notice. 4. Because the evidence is not sufficient to make Mr. Brockerhoff a trustee ex maleficio. 5. Because no parol mortgage can be created through the medium of a sheriff's sale, and, even if this be untrue, the evidence is not sufficient to find that the transaction was a mortgage.

1. The contention of respondents' counsel in their first proposition raises a question of equity pleading.

It is a fundamental rule of equity pleading that every fact

essential to the plaintiff's right to maintain the bill and obtain the relief sought must be stated in the bill, otherwise the defect will be fatal. For no facts are properly at issue unless charged in the bill, and of course no proofs can be generally offered of facts not in the bill. Nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleading and evidence; for the court pronounces its decree secundum allegata et probata: Story's Eq. Pl., § 257. So, also, it is said "that the bill in the first place must show clearly that the plaintiff has a right to the thing demanded, or such an interest in the subject-matter as gives him a right to institute suit concerning it:" Daniels' Ch. Pr., 312. Again; "Care must be taken in framing the bill that everything which is intended to be proved be stated upon the face of it; otherwise evidence cannot be admitted to prove it:" Daniels' Ch. Pr., 326.

The complainant charges in the second paragraph of his bill that an agreement was made with Mr. Brockerhoff and that the agreement was reduced to writing, and in the third paragraph he charges that it was left with Mr. Wallace for the benefit of both parties thereto. Upon the hearing before the master, Mr. Wallace testifies distinctly that an agreement or arrangement was made between the complainant and Mr. Brockerhoff; he is unable to say whether it was put in writing, and is unable to find it, if it was. Two or three witnesses are called to prove that Mr. Brockerhoff admitted that there was an agreement in writing, but their testimony is not of that clear, precise, and unquestioned character, so as to establish the fact that it was in writing. The master so found, and in this respect I agree with him; but the master thereupon proceeded to dismiss the bill, and in this respect I find myself unable to agree with him. The relief prayed for can be granted whether the contract is by parol or in writing. It is no ground of refusal that it is in parol, if the proof sufficiently establishes it, and there has been an actual, entire, or part performance of it, or if the facts proven bring it within the authorities.

That a parol contract was made cannot be questioned: the evidence of its terms is clear and strong; the relief sought would be the same as if the contract was laid before us in writing. The provisions of the alleged written agreement as

charged, differ in no essential from the provisions of the parol
contract.   Leaving out of mind the liberal allowance of our
courts in the amendment of pleadings and procedure, I deem
the proposition so technical that it ought not to prevail, even
under the former strictness of pleading.   And, as said before,
the relief that could and would be granted if the agreement
was laid before the court in writing, would not differ from the
relief that must be granted under the parol agreement, if it is
found to be within the equitable power of the court to recog-
nize it.   The respondents are therefore put to no disadvantage
in the relief flowing out of the transaction.   The essential
purposes of the agreement, whether written or parol, are the
same : to give the complainant an opportunity to redeem his
property.   The mode of establishing the right is alone the dif-
ference. . . . .

I believe it to be well established in our state that in a court
of equity relief will be granted where the evidence shows any
case requiring the interposition of the court, and the relief
sought is supported by the evidence, although not strictly com-
ing within the charging part of the bill, but embraced in what
is charged: Slemmer's App., 58 Pa. 168 ; Masson's App., 70
Pa. 26 ; Tolles' App., 110 Pa. 331 ; and Tolles' App., 22 W.
N. 1.   But if the master's position be correct and my view be
wrong, still, under the rules and practice of amending bills as
now so liberally construed and applied by the Supreme Court,
this technical point ought not to prevail.

2. Is the transaction disclosed by the evidence within the
objection that it was made to defeat, hinder, or delay creditors?
The evidence is entirely barren of anything tending to show
this.   The complainant's creditors had their judgments of re-
cord.   Some of them had writs in the sheriff's hands.   They
were in no way prevented from or induced not to bid at the
sale.   There is no evidence of fraud practiced, or misrepre-
sentation made, that caused them not to bid the property to
something near its real value, and in no respect is this case
within the class of cases where relief has been denied because
the sheriff's sale was made the medium of perpetrating a fraud
by hindering, delaying, and defrauding the creditors of the
defendant in the execution.   And I cannot sustain this propo-
sition and dismiss it, without more to show that it is not well
taken.

3. Are the respondents bona fide purchasers for value without notice? They take title under a deed from Mary Brockerhoff, a daughter of Henry Brockerhoff. The consideration is one dollar, and subject to certain trusts therein specified. Mary Brockerhoff receives her title from her father, Henry Brockerhoff, and it is also in consideration of one dollar, but without any trusts named therein. It is of no materiality that she received her deed apparently on February 20, 1878, and conveyed to her mother and brothers on February 21, 1878. These deeds, in my opinion, have no greater force and effect than that of voluntary conveyances, and the grantees in each are subject to the rights of the complainant, if it be contended that it was intended to include within the grant and to convey the title to the lands in dispute. The contention that the respondents are bona fide purchasers for value cannot, in my opinion, be sustained.

4, 5. This brings me to the consideration of the important questions in this case. If either of these propositions be true, then the complainant is without remedy, and the bill must be dismissed. I will consider them together, as they cover a discussion of the facts in the whole case, and are so interwoven that they cannot be separated. . . . . .

It is contended that under the fourth section of the act of April 22, 1856, such a parol agreement is void and cannot be enforced. The difficulty with this argument is, that the trust arising under these facts, if it be a trust, is one within the proviso of this fourth section, and the section therefore has no application to the case. These implied or resulting trusts may arise in different ways, as where lands are purchased with the money of another; where a trustee purchases land with the trust funds; where a joint owner purchases an outstanding title; where a trustee becomes a purchaser of the trust estate at his own sale; or, where a party becomes a trustee ex maleficio, by reason of his fraud in refusing to carry out the purposes of the deed or will by which he obtained the title. Under this latter clause an apt illustration is found and the law fully declared by SHARSWOOD, J., in Church v. Ruland, 64 Pa. 432, and Harper's App., 64 Pa. 315.

If this be a trust, then, resulting by implication or construction of law, the fourth section of the act of 1856, does not ap-

Opinion of Court below.

ply, and the relief sought can be granted, unless the remedy is barred by the limitation fixed in the sixth section of the act of 1856.

The sixth section provides: . . . . .

Under this section of the act of 1856, it is decided that the limitation does not bar the right of action where the cestui que trust has possession whilst the limitation would otherwise be running: Williard v. Williard, 56 Pa. 119. Here Gaines was in the actual possession of the farm lands and so continues to this day. As to the timber lands, the possession of Mr. Brockerhoff was co-equal and not greater than that of Gaines. The fixing of the prices at which it should be sold, the renting of the building spoken of as a hotel, and the general management of the land was the joint act of them both, Mr. Brockerhoff receiving the moneys arising from the sales and rents, and Gaines and Brockerhoff together fixing the prices. And I am strongly of the opinion that if the facts found make Mr. Brockerhoff a trustee, then the possession of Gaines was such that the limitation does not bar the relief asked for.

It was argued very earnestly by respondents' counsel that this was a bill for specific performance of a contract, until the counsel for complainant admitted that if it was they were without remedy. But it is clear that it cannot be treated as a bill for the specific performance of a contract for the sale by Mr. Brockerhoff of any real estate. The contract must be for the sale of real estate. The agreement in question is in all its essential parts for a right of redemption, and not for a purchase and sale, and the limitation, for that reason, does not apply. Neither is it an action for damages for non-compliance with any such contract. No more is it an action to enforce an equity of redemption after re-entry for condition broken. True, the complainant may be said to be asking for the enforcement of an equity of redemption, but not after "re-entry for condition broken." If it applies at all, it is because the bill seeks to "enforce an implied or resulting trust as to real estate."

We have seen in the twentieth and twenty-first finding of facts that Gaines, in pursuance of the agreement testified to by Senator Wallace, to enable Mr. Brockerhoff to complete the sale to Judge Furst, parted with his own title to one hun-

dred acres of land of the value of $1,300 or more, and without a particle of consideration flowing to him, unless the agreement he had made with Mr. Brockerhoff was being faithfully performed. In addition to this, he released the lien of a judgment, or had it assigned in such a way as to perfect the title. He paid the purchase-money due Flegal after the sheriff's sale of his equitable title to Mr. Brockerhoff, in amount $1,500 or thereabouts, which could only be explained on the ground that it was on the faith of the agreement between himself and Mr. Brockerhoff. These payments thus made, one directly to Mr. Brockerhoff which must be applied to the debt of Gaines to Brockerhoff, or be now absolutely lost to Gaines, and the other indirectly to Mr. Brockerhoff, because largely increasing the value of the Flegal property as security to him, in my opinion constitute such part and substantial performance of the agreement as bars the running of the statute if this be held a trust.

But upon this question, there is another point. The letter of Mr. Brockerhoff to Gaines, dated November 21, 1871, has the language: " I wrote to Wallace & Fielding to send me the deeds of the property of yours in Clearfield County bought in for me as we had agreed upon." This declaration can only have reference to the agreement testified to by Senator Wallace. Is this not a sufficient acknowledgment in writing of the subsistence of that agreement, coupled with the account shown on Mr. Brockerhoff's books, to take this case out of the bar of the limitation, and that without doing violence to the rights of the parties?

I do not find any decided case where the rule has been settled to what extent the writing must go. I do not believe that it was intended by this clause to declare that the writing must contain the details of the agreement, or its terms. If it was vital in this case, I would decide that the letter of November 21, 1871, taken with the other facts, was a sufficient acknowledgment of the subsistence of the agreement for the right to redeem, and that the sixth section of the act did not apply; but what is more to the point, it does seem to me that the facts under which these sheriff's deeds were made to Mr. Brockerhoff, taken with what took place between the parties afterwards, are entirely sufficient, on account of the refusal of the

respondents to permit Gaines to redeem the property, to establish a vice and fraud relating back to the inception of the title of Mr. Brockerhoff, and to constitute him a trustee ex maleficio by reason thereof.

It was contended on the argument, by the complainant's counsel, in reply to the argument of the respondents' counsel, that even if the facts would not justify the court to hold Mr. Brockerhoff liable under the evidence as a trustee ex maleficio, he and the respondents claiming under him, either as heirs at law or under the voluntary conveyances mentioned, were liable to account because the transaction was in all its essential parts a mortgage by parol. The question then arises can a parol mortgage exist or be created through the medium of a sheriff's sale, or, to speak more clearly, can a sheriff's deed be converted into and shown by parol to be no more than a mortgage in effect.

A mortgage exists wherever real estate is granted conditionally, it is true; but until the condition is performed, the title and possession are as substantial and real as though they were absolute. The evidence of this is, that the mortgagee may dispossess and hold out the mortgagor until he performs the condition, or until the perception of the profits reaches the same result. It is in form, when reduced to writing, a defeasible deed, and in substance a grant of a specific security, or an interest in land for the purpose of security: Tryon v. Munson, 77 Pa. 250.

In our case, the Crissman & Sons judgment, debt, interest, and costs amounting to $565 or thereabouts, was a lien prior to Mr. Brockerhoff's. His agreement to buy in Gaines' property at sheriff's sale and allow him to redeem it upon payment to him of what Gaines owed him, and the moneys he had to expend in that behalf, must have contemplated the advance of the amount at least of this Crissman & Sons judgment. The fact is, he paid this judgment, and it appears as a charge against Gaines in the account on his book. Here, then, is an essential fact existing undisputed, which is necessary to constitute the groundwork of a mortgage. An advance of moneys and the judgment of Mr. Brockerhoff are the consideration for the agreement that Mr. Brockerhoff would buy in the property at sheriff's sale, and that it should be reconveyed again to Gaines

when Brockerhoff received his own debt and moneys paid out under the sheriff's sale. . . . .

But, while there are cases which seem to decide that a sheriff's deed may not be converted into a mortgage, of which Fox v. Heffner, 1 W. & S. 372 ; Barnet v. Dougherty, 32 Pa. 371 ; Kellum v. Smith, 33 Pa. 158 ; and Kimmel v. Smith, 117 Pa. 183, are the most notable, yet there are cases where it is decided that the sheriff's deed may have and does have no greater force than a mortgage : Sweetzer's App., 71 Pa. 264, and Harrison v. Soles, 6 Pa. 393. . . . .

The respondents take under voluntary conveyances. They stand in no better position than Mr. Brockerhoff would if living. He bought this property at sheriff's sale under an arrangement by which Gaines was to have the right to redeem, for a grossly inadequate price. He received a large portion of his own debt and the money he advanced, by the perception of profits and the payment of moneys arising from the sale of Gaines' title to other lands to Judge Furst, in his lifetime, if not all of it; and it is but just to his reputation and memory to say, that had he lived, the arrangement would have doubtless been carried out by him. The respondents have a right to know that the complainant is not insisting upon a claim having its inception in wrong; but, if he makes out a just claim, it is doing no violence to their rights and equities to grant him relief.

Whether the arrangement made and so conclusively established be held to constitute a mortgage or a trust ex maleficio, in my opinion makes no material difference ; the sixth section of the act of April 22, 1856, does not apply. Whether right or wrong the conviction forces itself on my mind that the complainant is entitled to an account and that the master erred in dismissing the bill. In reaching this conclusion I have endeavored to state every point raised by counsel as well as those not discussed, in order that a higher court may see the whole case. If I have reached a wrong conclusion, no one will more readily concur in the judgment of the court, or regret that my error may have caused the expenditure of moneys to correct them.

I now proceed, therefore, to state an account as I gather the items from the testimony : . . . . .

Thereupon, the court stated an account, and found as a conclusion that the plaintiff was entitled to a decree for a reconveyance of the residue of the lands bought at sheriff's sale by Brockerhoff, and for the payment by the defendants to the plaintiff of $602.82, with interest from June 1, 1888. A final decree having been entered, the defendants took this appeal, filing a large number of assignments of error the nature of which is shown in the briefs of the argument.

*Mr. J. W. Gephart* and *Mr. Frank Fielding* (with them *Mr. James A. Beaver*), for the appellants:

1. The court erred in setting aside the findings of the master, and in undertaking to find the facts without a reference back to the master. We believe the practice is well settled, that "in all cases in equity where there is a contrariety of the testimony, the case must go to a master, and his report must come up on the appeal. His finding of facts is somewhat like a special verdict and must not be omitted. Its soundness is tested on exceptions in the court below, and the decision on these exceptions comes before this court. One portion of the grounds against error, in equity cases, is unemployed, when a court undertakes to decide on the testimony itself:" Clark's App., 62 Pa. 447. See, also: Atkinson's App., 22 W. N. 7; Phillips's App., 68 Pa. 138.

2. The court erred in not holding with the master that the failure of the plaintiff to prove a written agreement, as alleged in the bill, was an end of the plaintiff's case. Every averment necessary to entitle the plaintiff to the relief sought, must be contained in the charging part of the bill, and may not be supplied by inference or reference to some other part: Wright v. Dame, 22 Pick. 55; Brinkerhoff v. Brown, 4 Johns. Ch. 671; McElwain v. Yardley, 9 Wend. 549. A party is not allowed to state one case in a bill or answer, and make out a different one by proof: Boone v. Chiles, 10 Pet. 207; Foster v. Goddard, 1 Black 506; Hardy v. Hardy, 11 Wheat. 103; Winebrenner v. Colder, 43 Pa. 251.

3. The court erred in holding that, though the plaintiff had failed to prove the written agreement alleged by him and upon which his bill was founded, yet he was entitled to recover, if he established a verbal agreement or understanding of similar

Arguments.

import. (*a*) Mr. Brockerhoff having bought with his own money, the lands became his absolutely, unless he had entered into a written contract to reconvey upon being reimbursed. (*b*) A verbal agreement, made before or at the time of the sheriff's sale that he would buy and permit Gaines to redeem, would not be enforced either at law or in equity, as being within the statute of frauds. (*c*) Section 4, act of April 22, 1856, P. L. 533, is a complete bar to the plaintiff's right to a decree.

4. (*d*) There is no averment in the bill, or proof in the evidence, indicating or even intimating that Brockerhoff procured the sheriff's title by such fraud or bad faith as would make him a trustee ex maleficio. (*e*) And the provisions of § 6, act of April 22, 1856, P. L. 533, cannot benefit the plaintiff in any way, because he did not move to enforce his alleged right, and because there was no entry or possession, part performance, or acknowledgment in writing signed by the party to be charged, within five years after such alleged right accrued. These propositions are sustained by Kellum v. Smith, 33 Pa. 158; Barnet v. Dougherty, 32 Pa. 371; Bennett v. Dollar S. Bank, 87 Pa. 382; Kistler's App., 73 Pa. 393; Kimmel v. Smith, 117 Pa. 183; Brickell v. Earley, 115 Pa. 473; Salsbury v. Black, 119 Pa. 200.

5. A resulting trust in land can be raised only from fraud in obtaining title thereto, or from payment of the purchase money when the title is acquired: Bickel's App., 86 Pa. 204; Nixon's App., 63 Pa. 279; Cross's App., 97 Pa. 471. In cases of parol sales, where the attempt is to evade the statute of frauds by converting the vendor into a trustee for the vendee, by partial execution, it has been repeatedly held to be the duty of the court to exclude all the evidence if insufficient to make out such a case as would induce a chancellor to decree a conveyance: Brawdy v. Brawdy, 7 Pa. 157; Poorman v. Kilgore, 26 Pa. 371. A simple avowal by a purchaser at a sheriff's sale, whether made at the time of the purchase or afterwards, that the purchase was for another, will not support an allegation of a trust: Carhart's App., 78 Pa. 100.

6. The court erred in holding, in effect, that the sheriff's deeds to Brockerhoff were but mortgages, and conveyed but a defeasible estate subject to an equity of redemption in Gaines.

But, to convert an absolute deed into a mortgage by parol testimony, such testimony must be clear, explicit and unequivocal: Nicolls v. McDonald, 101 Pa. 514; Burger v. Dankel, 100 Pa. 113; Plumer v. Guthrie, 76 Pa. 441. And, when one buys real estate at sheriff's sale, under a verbal agreement with the debtor as whose property it is sold, to hold it in trust for him, with the right in the latter to redeem, the transaction is not a mortgage, and does not give the debtor the rights of a mortgagor: Kimmel v. Smith, 117 Pa. 183; Fox v. Heffner, 1 W. & S. 372; Jackman v. Ringland, 4 W. & S. 150. Sweetzer's App., 71 Pa. 264, and Harrison v. Soles, 6 Pa. 393, are distinguishable.

*Mr. Thomas H. Murray* (with him *Mr. Cyrus Gordon*), for the appellee:

1. The action of the court in finding the facts without a reference back to the master was legal, and, under the circumstances, entirely proper. What shall be referred to a master is a matter in the discretion of the court; his province is merely ancillary, and his report is neither a decision nor an infallible guide, but an instrumentality to aid the court in the performance of its own functions: Philips's App., 68 Pa. 130, 138.

2. The allegation of a written contract is not such a material allegation, as that failure to prove it defeats the plaintiff's right to recover. This is not the case of specific performance of a contract, but an assertion of a constructive trust or a parol mortgage, and neither a contract in writing nor an express verbal contract is essential; the right to recover may be a matter of inference from well proven facts or attendant circumstances: 1 Perry on Trusts, § 227; Williard v. Williard, 56 Pa. 125; Crawford's App., 61 Pa. 52; Seichrist's App., 66 Pa. 241; Rhines v. Baird, 41 Pa. 263; Sweetzer's App., 71 Pa. 273; Plumer v. Guthrie, 76 Pa. 441.

3. Under the allegations and proof in the case, the plaintiff is entitled to recover, independent of a written contract. Inter alia, under the letter of November 21, 1871, taken in connection with the book account of Brockerhoff, the plaintiff's case may be sustained as an express trust within the meaning of § 4, act of April 22, 1856, P. L. 533. Trusts need not be created or declared in writing, but only manifested or proved

in writing: 1 Perry on Trusts, § 79; Barrell v. Joy, 16 Mass. 221; Wetherill v. Seitzinger, 9 W. & S. 177; Raybold v. Raybold, 20 Pa. 308; 1 Perry on Trusts, § 82; Hollinshead v. Allen, 17 Pa. 284.

4. Under the proofs in the case, the claim of the plaintiff may be sustained as a trust or confidence within the proviso to § 4, act of April 22, 1856, P. L. 533. Resulting trusts are trusts that the court presumes to arise out of the transaction; a constructive trust is one that arises when a person, clothed with some fiduciary capacity, by fraud or otherwise gains some advantage to himself: equity not only watches over the defined relations of the parties, in such case, but it scrutinizes the undefined relations of friendly habits of intercourse, personal reliance, and confidential advice: 1 Perry on Trusts, §§ 26, 27, 166, 210; Seichrist's App., 66 Pa. 241; Miller v. Pearce, 6 W. & S. 101; Darlington's App., 86 Pa. 512; Morey v. Herrick, 18 Pa. 128; Boynton v. Housler, 73 Pa. 458.

5. Of course, unless there is in the transaction more than is implied from the mere breach of a parol agreement, equity will not decree a purchaser to be a trustee. And Barnet v. Dougherty, 32 Pa. 371, and all the cases relied upon by the defendants upon this point, are cases of the violation of a mere naked promise. But, it is not essential to the admission of parol evidence, that a fraud was originally intended; it is enough that, though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest the instrument to a purpose not contemplated, or to use it in violation of the agreement. It is as much a fraud to obtain a paper for one purpose, and use it for a different and unfair purpose, as to practice falsehood in its procurement: Rearich v. Swinehart, 11 Pa. 240; Stafford v. Wheeler, 93 Pa. 462; Church v. Ruland, 64 Pa. 433; Parke v. Chadwick, 8 W. & S. 98; Lingenfelter v. Ritchey, 58 Pa. 488; Lippincott v. Whitman, 83 Pa. 246.

6. Under the proofs in this case, the claim of the appellee may also be sustained as a parol mortgage. In every case in which it is made to appear that a deed was intended by the parties as a security for the payment of money, there is necessarily an implied agreement to execute a written defeasance whenever required; and to insist that what was really a mort-

gage was a sale, is in equity a fraud, which cannot be success-
fully practiced under the shelter of written papers, however
precise and complete they may appear to be: Maffitt v. Rynd,
69 Pa. 387. The rule does not impinge on the statute of frauds:
it is necessary to hold the law so, to prevent frauds : Sweetzer's
App., 71 Pa. 273 ; Kunkle v. Wolfersberger, 6 W. 130 ; Hies-
ter v. Maderia, 3 W. & S. 384; Rhines v. Baird, 41 Pa. 256.

OPINION, MR. JUSTICE McCOLLUM:

The numerous specifications of error filed in this case raise
but few questions. It was alleged in the plaintiff's bill that
the agreement under which he claimed was in writing, and
lost; and he gave some evidence tending to prove this allega-
tion, but not enough, in the opinion of the learned master, to
sustain it. There was, however, a full hearing of the cause
before the master, and evidence was taken by him to show an
agreement in parol like that which was set out in the bill as
written, the occupation, use and improvement of the property
by the plaintiff after the sheriff's sale, and all matters germane
to the issues formed by the pleadings. After the litigants had
exhausted their proofs on these subjects, the master refused to
pass upon the questions of fact raised by them, on the ground
that the plaintiff, having failed to establish a written agree-
ment, was not entitled to the relief sought. Upon exceptions
filed to the master's report, the learned judge of the court be-
low thoroughly examined and carefully considered the testi-
mony, and from it found the facts on which the decree before
us was entered.

It is contended, first, that the court erred in not recommit-
ting the case to the master to find the facts.

We are not aware that the power of a court of equity to find
the facts in a case before it, upon the testimony reported by
an examiner or a master, has ever been denied. It is a power,
however, which is seldom exercised; and this court has often
said, in substance, that where an equity case depends on oral
testimony, it should be referred to a master to report the facts.
But the province of a master is merely ancillary, and his work
is simply in aid of the court in the performance of its own
functions: Phillips's App., 68 Pa. 130. The present cause
came on to be heard, on exceptions to the master's report, more

Opinion of the Court.

than two years after the testimony was closed before him. If
it had been recommitted to him, he could have derived but
slight, if any, assistance from his recollection of the appear-
ance and manner of the witnesses under examination, and
would have been compelled, like the court, to depend on the
testimony as reported by him. We are not willing to say, un-
der the circumstances of this case, that the court should have
sent it to the master again, but if the omission to do so be re-
garded as a mistake in practice, it was cured " by the full
statement of facts and findings by the learned judge in his
opinion preceding the decree now appealed from : " Herdic's
App., 58 Pa. 212.

It is not our purpose to incorporate in this opinion any por-
tion of the testimony on which the facts were found by the
court below. We have read and considered it with care, and
we think it abundantly sustains the findings. Indeed, we can-
not see how, upon the substantive questions in the cause, dif-
ferent conclusions of fact could have been reached from it.
A clear and full statement of the testimony relating to the
agreement will be found in the opinion of the learned judge,
in connection with the finding upon that question. It dis-
closes an agreement made before and existing at the time of
the sheriff's sale, followed by a course of dealing between the
parties consistent with it and impossible to reconcile with an
absolute transfer of title. A direct conveyance of the pro-
perty by the plaintiff, under such an agreement, would have
constituted a mortgage. A deed absolute on its face may be
converted into a mortgage by its attendant circumstances, and
in the absence of express proof of a defeasance : Rhines v.
Baird, 41 Pa. 256. In the case cited, Mr. Justice STRONG
said : " Facts and circumstances inconsistent with its being an
absolute conveyance may be proved, and from them a court of
equity may, and often does, infer that security for a debt . . . . .
was intended, and hence will decree that that which was in
form a deed is in reality a mortgage."

May an arrangement which, if consummated directly by the
parties, would have constituted a mortgage, retain that charac-
ter, between the parties to it, if a sheriff's sale is invoked by
them to carry it out? For myself, I see no substantial ground
for a distinction. In either case, the defeasance can affect only

the parties to it and those who have notice of it. The deed in
either case, apparently, and as respects innocent parties, con-
veys an absolute title. Why should we hold the grantor to his
agreement in one case, and absolve him from it in the other?
The circumstance that the parties resorted to legal process in
furtherance of their arrangement, should not be allowed to de-
feat it, or used to enable one party to perpetrate a fraud upon
the other. It was held by this court in Harrison v. Soles, 6
Pa. 393, that a parol agreement between a judgment creditor
and defendant that the creditor should become the purchaser
at sheriff's sale of the land of the debtor, and hold the same as
collateral security for his debt, giving the debtor the right to
redeem, was valid, and could be enforced. In that case the
land was purchased by the creditor, who took possession of it,
and afterwards attempted to collect the portion of his judg-
ment which was not paid by the sheriff's sale; and he was re-
quired to account for the rents and profits according to the
terms of the parol agreement. It was decided that he was a
mortgagee in possession, and bound to apply the rents of the
property to the debt for which it was pledged. It is worthy of
note that the opinion of the court in Harrison v. Soles was de-
livered by Mr. Justice ROGERS, from whose opinion in Jackman
v. Ringland, 4 W. & S. 149, the appellants quote in support of
their contention in this case. In Sweetzer's App., 71 Pa. 264,
a sheriff's deed was converted into a mortgage by a parol agree-
ment which allowed the debtor to redeem the property. The
authority of this case has not been impaired by subsequent de-
cisions. It was recognized in Heath's App., 100 Pa. 1, in
which the present Chief Justice, in delivering the opinion of the
court, said : " We think the facts as set forth in the bill bring
the case within the principle of Sweetzer's Appeal, . . . . .
where a sheriff's deed was held to be a mortgage, and the
grantee named therein a trustee for the man whose land he had
bought at sheriff's sale." In Sweetzer's Appeal full effect was
given to the agreement of the parties in pursuance of which
the property was sold by the sheriff, and it was determined that
the sheriff's deed was subject to the defeasance agreed upon.
In Logue's App., 104 Pa. 136, a sheriff's deed was converted
into a mortgage by proof of a parol agreement that it was made
as security for a debt or loan; and in the case of Saunders v.
Gould, 134 Pa. 445, this principle was distinctly recognized.

Fox v. Heffner, 1 W. & S. 372, and Jackman v. Ringland, supra, are cited in support of the broad proposition that a sheriff's deed cannot, under any agreement or circumstances, be converted into a mortgage. These were actions of ejectment. In the former case, in disposing of the claim that the transaction was a mortgage, Mr. Justice SERGEANT said: "There seems to be nothing in the evidence to justify this view of the case." In the latter, the question was raised upon an offer to prove a naked parol agreement. There was no evidence or offer to show, in either case, that anything had been done on the faith of the agreement; that the purchaser had acquired, or the debtor had lost, anything in consequence of it. In Kimmel v. Smith, 117 Pa. 183, which was also an action of ejectment, our Brother GREEN said: "The second assignment must be sustained, because the transaction in question was in no point of view a mortgage, and in fact it was presented in the general charge as a sale exclusively, and not as a mortgage; and to say it was both, upon the same facts, was necessarily confusing and misleading to the jury. The plaintiff could only recover on the theory that Lawrence Kimmel was a trustee ex maleficio for the plaintiff, because of fraud in the making of the parol agreement to convey the land to the plaintiff. Upon that theory the case was tried, and there was none other upon which it could have been tried." He said, further, that there was "the most profound uncertainty as to the essential features of any agreement." It was to such a case that he applied the language of Mr. Justice SERGEANT in Fox v. Heffner, and of Mr. Justice ROGERS in Jackman v. Ringland.

In the present case, the parties to the agreement were debtor and creditor, between whom business and friendly relations had existed for a long time, and the affairs of the former were well known to the latter. The agreement involved advances by the creditor to pay the costs of sale and the Crissman & Sons judgment, and these he charged upon his ledger to the debtor. Under this agreement, he bid off at the sheriff's sale lands of the debtor worth at least $12,000 for the nominal sum of $635. The debtor continued in the actual and exclusive possession of tracts Nos. 1 and 2 without payment or demand of rent; he made valuable improvements on them at his own expense, and the sales of land and timber covered by the sheriff's deed were made on

consultation with, and at prices agreed to by him. Upon the faith of the parol agreement, at the request and for the benefit of the creditor, he paid $1,500 of purchase money due on one of the tracts, and conveyed land, not included in the sheriff's deed, worth $1,300. The creditor distinctly recognized this agreement in his letter of November 21, 1871, and, by acts, declarations, and a course of dealing which would make repudiation of it now a fraud, confirmed it. It should be remembered to his credit that this recognition and acknowledgment of the agreement made with his friend and debtor continued until his death. These are a few of the facts with which this case bristles, and which, we think, bring it within the principle of Sweetzer's Appeal, and distinguish it from the cases relied on by the defendants to defeat this action.

The defendants are not bona fide purchasers for value of the lands in controversy. Their claim to be such rests on the deeds of February 20 and 21, 1878, but these lands are not described in them; and it would appear from the testimony of Andrew Brockerhoff, one of the defendants, when called by the plaintiff on cross-examination, that it was not intended to include them. He said: "I advised my father to make the deed on account of his old age, and directed the making of the deeds, descriptions and all. I directed my father to leave out the lands in Elk county, and these lands in controversy." In view of this testimony, it is probable that the use of language in the deed of February 20th broad enough to include these lands was a mistake, and the attempt of the defendants to build a defence upon it is surprising. But, aside from this, there is nothing in the transaction represented by these deeds which secures to the defendants any better standing to contest the plaintiff's claim than the party to whose rights they have succeeded.

There is no evidence in the case which stamps the arrangement under which the sheriff's sale was made as a fraud upon creditors; and, certainly, we are not to presume fraud in favor of parties who allege it, that they may retain the fruits, and escape the obligations, of a contract their father made.

The bill alleges that the agreement was written; the proof is that it was verbal. Is the variance fatal? We think not.

A parol defeasance, sufficiently proven, is the equivalent of a written one. The vital question is, not whether the agree-

Syllabus.

ment was reduced to writing, but whether it was made. In Danzeisen's App., 73 Pa. 65, the bill charged that the defendant held the property in trust for the plaintiff, and it was dismissed at nisi prius on the ground that a trust was not shown; but, on appeal to this court, it was sustained as a bill to redeem a mortgage. The case at bar was fully heard upon its merits; the variance is technical, rather than substantial, and, if necessary to reach the justice of the case, an amendment would be allowed at any stage of the proceeding. We regard the transaction respecting the lands in question as a mortgage of them for the purpose stated in the ninth finding of facts by the court below. It was always so understood and recognized by the parties to it, and the effort of the heirs and legal representatives of the mortgagee to stamp it as a sale cannot be sanctioned. In this view of the case, the statute of frauds has no application, and there is no limitation or laches which prevents a recovery. The learned judge of the court below stated an account between the parties which we think is fairly sustained by the evidence. All the items of claim on both sides, and the proofs to support them, were before him. He was not asked to refer the case to a master to state an account, and it is not alleged that there is other evidence affecting these claims. The parties have had a full and fair hearing upon all the questions raised, and a just conclusion has been reached.

Decree affirmed and appeal dismissed, at the cost of the appellants.