## PERRYMAN *et al* v. WOODWARD.

No. 1678.   Opinion Filed March 19, 1912.

On Rehearing June 19, 1913.

(133 Pac. 244.)

1. EXECUTORS AND ADMINISTRATORS—Allowance to Widow—Entire Estate—Effect of Award. Where the owner of an estate situated in Indian Territory, of less value in the aggregate than $300, died in Indian Territory prior to statehood, an order of the United States court, exercising its probate jurisdiction, vesting the entire estate in the widow of decedent, was valid, and passed and vested in the widow, all of such estate both real and personal, under section 3 of chapter 1 of Mansfield's Digest of the Laws of Arkansas.

(Syllabus by Brewer C.)

### ON REHEARING.

2. EQUITY—Hearing Before Master—Evidence—Exclusion—Master's Report—Exceptions—Re-offer of Evidence. Under the law in force in the Indian Territory prior to statehood, where a copy of a judgment was offered in evidence before a master in chancery, excluded by him and exceptions saved by the party offering it, it was not error for the court upon sustaining the exceptions to the report of the master to consider the judgment so offered without referring the case to the master, where the judgment was copied into the report of the master, and was properly admissible in evidence.

3. INDIANS—Indian Lands—Improvements—Patents—Title of Purchaser. Where a town lot in the Creek Tribe was scheduled to the owner of the improvements, and after his death was sold by the person in whom the law vested the improvements, and the payments due the tribe were paid by such purchaser, the patent from the tribe in the name of the deceased owner of the improvements inured to and carried title to such purchaser.

4. SAME—Statute Law. Section 3 of chapter 1 of Mansf. Dig. of Ark. was not locally inapplicable and was extended over and put in force in the Indian Territory by Act Cong. May 2, 1890, c. 182, 26 St. at L. 81, although repugnant to the Constitution of Arkansas so far as it affected homesteads; and an order of the probate court vesting the entire estate of a deceased person in the widow of the deceased was valid and effective where

*Appealed to the United States Supreme Court.

the entire estate did not exceed $300 in value, though a portion of the estate consisted of improvements on a town lot occupied as a home.

(Syllabus by Rosser, C.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Suit by Patsy Perryman and others against Peggy Woodward to quiet title. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Blakeney & Maxey, Gibson & Thurman, Thomas & Foreman,* and *Benj. & Villard Martin,* for plaintiffs in error.

*W. W. Momyer* and *Bailey & Wyand,* for defendant in error.

Opinion by BREWER, C. This suit involves the title to a town lot in Muskogee. It was brought as an equitable proceeding in the United States Court for the Western District of Indian Territory on September 19, 1906, by the plaintiffs in error as plaintiffs against the defendant in error as defendant. Hereafter the parties will be referred to as they were known in the trial court. We summarize the facts, as follows: Plaintiffs were the adult children of one Squire Saunders. On June 4, 1900, Squire Saunders was in possession and occupying as a home lot 10, block 248, of the town of Muskogee, Creek Nation, Indian Territory, and was entitled under the acts of Congress relating to town sites to have said lot scheduled to him, and the preference right to purchase same at one-half its appraised value. That on said date June 4, 1900, said lot was so scheduled to him by the town-site commission. That on October 22, 1900, Squire Saunders died intestate, leaving a widow, Sarah Saunders, and the plaintiffs, his children, him surviving. That a patent to the land was issued in the name of Squire Saunders by the Principal Chief of the Muskogee (Creek) Nation approved by the Secretary of the Interior June 27, 1904. That on November 16, 1900, after the

death of Squire Saunders, the United States court, in the exercise of its probate jurisdiction, made an order determining the value of the estate of Squire Saunders to be less than $300, and vesting the same in the widow. About a month after this order was made the widow sold the property in controversy to the defendant, who paid the consideration, and went into possession of the property. No deed was executed. The defendant was in possession at the time of suit, and was not disturbed in her possession by the judgment in the case. The defendant after buying and taking possession of the property paid to the proper officers all the purchase price for the lot due the Creek Nation under the town-site law. The evidence was heard by a master in chancery, who made findings of fact and conclusions of law, and filed same, together with the evidence taken in the case. The master found in favor of plaintiffs. Exceptions were filed to the report, and after statehood the district court for Muskogee county, as successor of the United States court, heard the exceptions to the master's report and sustained same. The court made special findings of fact substantially as stated above, and that there was no equity in plaintiffs' petition. A decree was rendered in favor of the defendant. This appeal is prosecuted to reverse that decree.

There are a number of assignments of error in this case, but they all depend in our judgment upon the question of the legal effect of the order made by the United States court on November 16, 1900. It is as follows:

"In the United States Court for the Northern District of the Indian Territory, sitting at Muskogee. Probate No. 454. In re Administration of the Estate of Squire Saunders, Deceased. Sarah Saunders, Widow. Order of Court. Now on this 16th day of November, A. D. 1900, the same being one of the regular judicial days of the September Term, the above styled cause came on for hearing upon the report of Z. T. Walrond, probate commissioner, and the court, being advised in the premises, finds that said report should be sustained. Whereupon, it is considered, ordered, and adjudged by the court that, it appearing that the estate of said deceased does not ex-

ceed $300, the said estate do vest absolutely in Sarah Saunders, the widow of said Squire Saunders, deceased. It is further ordered that the improvements on lot 10, block 248, of the town site in Muskogee, and the horse, saddle, and bridle, and the other personal property described in the petition of the said widow, are declared to be the property of the said widow, and that there be no administration granted upon the estate of the said decedent. The costs of this proceeding, including an allowance of $5.00 made to the probate commissioner are taxed against the said Sarah Saunders. Approved. John R. Thomas, Judge. [Seal.]"

This order was made in pursuance of the law of Arkansas in force in Indian Territory at the time the rights of the parties to this suit arose. Mansfield's Dig. Ark. sec. 3, c. 1, is as follows:

"When any one shall die leaving a widow or children, and it shall be made to appear to the probate court that the estate of the deceased does not exceed three hundred dollars, the court shall make an order that the estate vest absolutely in the widow or children, as the case may be; and in all cases when the estate does not exceed eight hundred dollars the widow or children, as the case may be, shall be entitled to retain the amount of three hundred dollars of the property at cash price."

If this judgment had the effect under the law in force at the time of passing the estate of Squire Saunders in the lot in controversy absolutely, and vesting same in his widow Sarah Saunders, then the judgment of the court in this case is not contrary to the law, or the evidence, the motion for new trial was properly overruled, the report of the master should not have been confirmed, and the judgment for defendant was correct, thus disposing of the main assignments of error urged by plaintiffs. We think it had such effect. The law of Arkansas being in force in Indian Territory at the time of the transactions shown in this record, the interpretation given the statute involved by the Supreme Court of that state prior to its adoption by Congress as a law in Indian Territory is controlling.

This statute had been fully considered and construed by the Supreme Court of Arkansas before its adoption. In *Har-*

*rison v. Lamar,* 33 Ark. 824, it was held that the word "estate" used in the statute means the whole "mass" of decedent's property, both real and personal, and that, if at the date of his death a decedent's property is of less than $300 in value, it is given by the law *proprio vigore* to the widow, and that an order of the probate court is not necessary to vest it. This case also holds that a proceeding in the probate court to declare the estate in the widow is *in rem,* and that no notice to heirs is necessary, and that the order need not recite all the jurisdictional facts. We quote from the body of the opinion in the Harrison case, *supra:*

"There are no grounds for drawing a distinction between real and personal property in the construction of these acts. If there were any, the 'estate' must be considered as more aptly referring to real property. But under our system of administration, which regards the whole mass of property, real and personal, as assets for some purposes, in the hands of the administrator the word estate has acquired a wider application, in a popular sense, and in this sense, doubtless the Legislature meant to use it. It means the mass of property left by decedent, and if that in the aggregate, should be less than $300 in value, the intention of the acts, taken together, is to give it to the widow, if living, or, if there be no widow, to minor children."

And further:

"It is a proceeding *in rem,* fixing the status of the property as to ownership, and declaring to all the world the course of devolution which, under the circumstances, the law gave to the property of the deceased. It did not vest the right so much as declare it, and it was not necessary that it should specify the personal property, or describe the lands by metes, bounds, or numbers. It carried the whole property without reserve, leaving nothing to be determined with regard to its identity, but the fact that it was part of the estate left by decedent."

And further:

"The statute does not prescribe any notice to be given to heirs or distributees. As to these small estates, they have no *prima facie* rights; the amount of the estate being admitted. They are taken out of the course of devolution prescribed to larger ones, and, there being no right to be divested out of

them, there is no other reason for making them parties than that they should have the right to question the amount of the estate."

· And further:

"The property by the order vested absolutely in fee simple in the widow."

In *Hampton v. Physick,* 24 Ark. 562, the syllabus reads:

"Although the probate court may fail to make an order vesting the entire estate of a deceased husband in the widow when it does not exceed $300, she may, in a proceeding against her to account for the estate, show that it did not exceed that sum, and thus avail herself of the benefit of the statute."

Other cases more or less in point are *Word, 'Adm'r, v. West,* 38 Ark. 243; *Smith et al. v. Allen,* 31 Ark. 268.

It is well settled that possession of land under a contract of purchase where the consideration has been paid entitles the purchaser to have specific performance of the contract. *Kellums v. Richardson,* 21 Ark. 137. Prior to the issuance of patent, the schedulee was the equitable owner of the lot under the doctrine of *de Graffenreid v. Iowa L. & T. Co.,* 20 Okla. 687, 95 Pac. 624.

If Squire Saunders, the schedulee, after the lot had been scheduled to him, had conveyed it to another, as was done in thousands of cases in Indian Territory before the payments had been made and patents issued, would any one doubt but that his vendee would have taken all his estate in the lot? We. think not. Then if the law, under the facts, provided a devolution of the property as an exception to the general rule, because of the insignificance of the estate, and by it passed the lot to the widow, she must have succeeded to his entire interest and estate in the lot.

. "One who sells land for which no patent has been issued by the government will upon issuance to him of the patent hold title as trustee for his vendee." (*Moore v. Maxwell,* 18 Ark. 469; *Peay v. Capps,* 27 Ark. 163.)·

If the law devolved the entire equitable ownership of this lot upon the widow, Sarah Saunders, and we hold that it did,

and she conveyed it to defendant, and we hold that she did, then it would have been inequitable in a proceeding in equity to decree the possession, rents, and profits and a partition of the lot upon the prayer of those holding, at most, the naked legal title. "Equity regards that as done which ought to be done." A discussion of this maxim appropriate to the instant case is found in Pomeroy's Equity Jurisprudence (2d Ed.) sec. 375, as follows:

"The principle is no less truly and directly the source of the equitable ownership regarded as held by the beneficiary in all trusts which arise by operation of law, resulting, implied, or constructive. Although the fiduciary. relation is not created by the terms of any direct conveyance, devise, assignment, agreement, yet by the settled doctrines of the equity jurisprudence an equity exists between the parties which is treated as worked out; an obligation to convey the subject-matter rests upon the holder of the legal title, which is treated as though performed. Some modern judges of great learning and ability have said that the relations commonly known as 'constructive' or 'resulting' trusts are only trusts *sub modo,* are called trusts only by way of analogy, and for want of a better and more distinctive name. Even if this criticism upon the ordinary nomenclature be well founded, it does not deny, and was not intended to deny, the existence of the real, beneficial, equitable property in the beneficiary. He is admitted to be the equitable owner, with all the incidents of ownership, although the legal title is vested in another person. The beneficiary may not have anything which the law requires as a 'title,' he may even be without any written evidence of his right, his proprietorship may rest wholly upon acts and words, but still he is the equitable owner because equity treats that as done which in good conscience ought to be done."

The remaining assignment of error relates to the action of the court in overruling plaintiffs' motion to strike from the case-made the order of the United States court, *supra*: this is brought to our attention by a bill of exceptions allowed by the court. This order appears in the testimony filed with the report of the master in chancery, and is followed by this statement of the master: "The foregoing testimony, together with

the exhibits hereto attached, was all the evidence offered in the case. Clark J. Tisdel, Master in Chancery." It appears in the body of the testimony, and is not merely exhibited as are certain other documents. There was no proof taken on the question as to this order being the identical one put in the evidence, and counsel has not argued the matter in their brief, nor suggested any good reason why the court should have stricken it from the evidence, and from examining the record we find none; and, the record being against the contention, it cannot be sustained.

Upon a review of the whole record, we have no doubt but that the decree of the court was equitable and just, and ought to be affirmed.

By the Court: It is so ordered.

---

## ON REHEARING.

Opinion by ROSSER, C. Three grounds for reversal are urged in the petition for rehearing in this case. It is urged that the case must be reversed because the order of the probate court vesting the improvements on the lot in controversy in the widow of Squire Saunders was not received in evidence at the hearing before the master. The report of the master shows that the order was offered in evidence, but excluded by him. The order, however, is set forth at length in the report, and was considered by the court in passing upon the exceptions to the master's report. The record with reference to the order shows the following:

"By the Master: Case closed, with exception of a certified copy of the order in probate case of the estate of Squire Saunders, which it is agreed by Judge Thomas shall be introduced subject to his objection when he has seen it, and that made closes the case.

"Mr. Thomas: Plaintiff objects to the introduction and consideration of the certified copy of the order of the probate court in the matter of the estate of Squire Saunders, deceased,

for the reason that said order related exclusively to the personal estate of Squire Saunders and not to real estate, and therefore is incompetent and inadmissible in this action for partition of real estate."

The master sustained the objection to the order apparently upon the ground raised by the objection. The material portion of the order of court is as follows:

"Whereupon it is considered, ordered, and adjudged by the court that, it appearing that the estate of said deceased does not exceed $300, said estate be vested absolutely in Sarah Saunders. the widow of said Squire Saunders. It is further ordered that the improvements on lot 10 in block 248 of the township in Muskogee, a horse, saddle, and bridle, and the other personal property described in the petition of the said widow are declared to be the property of said widow, and that there be no administration granted upon the estate of the decedent."

The question does not appear to have been specially called to the attention of the trial court in motion for new trial, unless by the general allegation of error that the judgment was contrary to law. It is claimed that the statutes prevented the court from considering the evidence offered as part of the record and required it to re-refer the matter to the master. Section 5269 of Mansf. Dig. of Ark. provides that:

"If either party shall except to the competency of any witness, or to the admission or exclusion of any evidence, the master, if required, shall state the particulars of the exceptions in his report."

Section 5273 provides that:

"Exceptions may be allowed to the master's report where he admitted incompetent testimony, or where he excluded competent testimony, or for any other cause which may be adjudged good by the court, or when it shall be apparent from the face of the report that injustice has been done."

Section 5274 provides that:

"When exceptions are allowed, the court may refer the report to the master again, with such instructions as may be necessary."

Section 5276 provides that:

"Where exceptions have been allowed to the master's report, and the account shall have been restated by the court or master, a decree shall be entered accordingly."

It will be seen from the section last quoted that the court, under the law in force in the Indian Territory prior to statehood, was not required to re-refer all cases in which exceptions are allowed. The court could pass upon the case without re-referring it; and this is the general rule. *American Freehold L. & Mort. Co. v. Pollard,* 132 Ala. 155, 32 South. 630; *McHenry v. Moore,* 5 Cal. 90; *Davis v. Roberts,* Smedes & M. Ch. (Miss.) 543; *Taylor v. Read,* 4 Paige (N. Y.) 561; *Gaines v. Brockerhoff,* 136 Pa. 175, 19 Atl. 958; *Huston v. Cassidy,* 14 N. J. Eq. 320.

The order of the probate court vesting the property in the widow was offered in evidence. While the master excluded it, he copied it in his report, and sent it up to the court where it was treated as before the court. The judgment of the court was based upon it. It was not urged or contended that the probate order was not entered, or that it was not in all respects regular. The only objection made to it was that it was made with reference to personal estate, and not real estate. Its existence is not challenged anywhere in the proceedings. It does not seem that the law would require the case to be reversed and sent back for the purpose of formally offering and receiving in evidence certified copy of the judgment which nobody disputes was entered, and which was offered in evidence and treated by the court as if it had been regularly offered in evidence. The court merely sustained the third exception urged by the defendant, which was that the master erred in refusing to admit the order of court in evidence, and refusing to consider it himself. As was said by Mr. Chief Justice Taney in the case of *Kelsey v. Hobby,* 16 Pet. 269, 10 L. Ed. 961:

"There is no propriety in requiring technical and formal proceedings, when they tend to embarrass and delay the administration of justice, unless they are required by some fixed

principles of equity law or practice, which the court would not be at liberty to disregard."

The case is different from cases in which oral evidence offered has been excluded by the master. In those cases it must be re-referred in order that the party objecting may be allowed to cross-examine the witness, if his evidence is considered admissible. Even in those cases, according to the practice in most states, the witness may be offered before the court to be heard by him rather than have the case re-referred. But in the present case there was nothing to cross-examine. It was record evidence and the existence of the record was practically admitted, and it was considered by the court.

It is next contended that the order did not pass title to the land to the defendant, and that the deed from the Principal Chief of the Creek Nation to Squire Saunders carried the title to his heirs, and not the defendant Peggy Woodward, who bought the property from his widow. Under the treaty with the Creek Nation, the right to buy the land from the government depended upon the ownership of the improvements on the land. The order of court vested the title to the improvements in Squire Saunders' widow, and she sold them to the defendant. The defendant then paid the purchase price to the Creek Nation. That vested her with full title. It is argued that, where the person in whose name the lot was scheduled died before receiving title, the deed from the Principal Chief conveyed the land to his heirs in the same way that it conveyed land to the heirs of a deceased allottee. This argument is based upon the language of section 23 of the Original Creek Treaty (Act March 1, 1901, c. 676, 31 St. at L. 868), which is in part as follows:

"The Principal Chief shall, in like manner and with like effect, execute and deliver to proper parties deeds of conveyance in all other cases herein provided for."

It is claimed that this section gave the deeds to town lots the same effect that it did to patents or deeds to allottees. The deed in this case was made since the passage of Act April 26,

1906, c. 1876, 34 St. at L. 137. The provisions of section 5 of· that act are as follows:

"That ·all patents or deeds to allottees in any of the Five Civilized Tribes to be hereafter issued shall issue in the name of the allottee, and if any such allottee shall die before such patent or ·deed becomes effective, the title to the lands described therein shall inure to and vest in his heirs."

It is argued that under this section the patent from the Principal Chief vested the title in the heirs. This argument is not tenable. Section 5, Act April 26, 1906, was passed several years after the Original Creek Treaty was made, and section 5 of said act was intended to apply only to allotments. Allotments could not be sold prior to their selection, but there was no such prohibition with reference to the sale of town lots. They could be sold at any time, and thousands of titles in the towns on the Indian Territory side of the state would be rendered defective if it should be decided that a patent from the Principal Chief of the tribe conveyed the land to the heirs, notwithstanding they or the owner of the lot may have sold it prior to the execution of the patent. In ·such cases section 642 of Mansf. Dig. (which was only declaratory of the common law) applied, and the patent inured to the benefit of the grantee of the patentee. The heirs in this case inherited nothing, because the property was worth less than $300, and vested in the widow.

Lastly, it is urged that section 3 of chapter 1 of Mansf. Dig., under which the defendant in this case claims that the order of the court vesting title in her grantor was made, was not in force in Arkansas at the close of the session of the General Assembly of the state of 1883, as published in 1884, in a volume known as Mansf. Dig., because it was in conflict with the Constitution of Arkansas with reference to homesteads. It was held in Arkansas, in the case of *Sansom v. Harrell,* 51 Ark. 429, 11 S. W. 683, that where the estate or a portion of it was homestead, it would not vest in the widow, although it might not exceed $300 in value, because the devolution of the homestead· was provided for by section 6 of article 9 of the Con-

stitution of Arkansas, which provided that the homestead should vest in the widow during her natural life, with remainder to the children. But in the case of *Chappel v. Gidney,* 134 Pac. 859 (not yet officially reported,) it was held in an opinion by Mr. Justice Kane that the statutes mentioned in section 31, Act May 2, 1890, were extended over the Indian Territory if not locally inapplicable, whether they were in force in Arkansas or not. Section 3 of chapter 1 of Mansf. Dig. was not locally inapplicable, and it was extended over the Indian Territory, notwithstanding that it conflicted with the provisions of the Constitution of Arkansas referred to. The order of the court vesting the improvements in the widow of Squire Saunders was therefore valid, and conveyed title.

The former opinion affirming the judgment of the lower court should be adhered to.

By the Court: It is so ordered.