## SOCKEY v. ELLIS et al.

No. 15722—Opinion Filed Sept. 29, 1925.

1. **Indians—Descent of Lands According to Oklahoma Law—Construction of Federal Statute.**

The provision of section 9, Act of Congress, May 27, 1908, that the lands of deceased members of the Five Civilized Tribes of one-half or more Indian blood should "descend to the heirs according to the law of descent and distribution of the state of Oklahoma," is a general reference, and means the law of the state, as amended or revised, and as it existed from time to time, or at the time the exigency arises to which the law is to be applied.

2. **Same—Inheritance of Minor's Allotment in Mother to Exclusion of Father Living Apart.**

Homer Sockey, a minor member of the Choctaw Tribe of Indians, died in 1918, seized of his allotment of land, leaving him surviving as his sole and only heirs, his father and mother. Held, that, under section 9, Act of Congress May 27, 1908, the devolution of the estate is governed by the law of descent and distribution of the state of Oklahoma, as it then existed, viz., subdivision 3, section 8418, Rev. Laws 1910, providing that the estate must go to the parents equally, if living together; if not living together, to the parent having the care of said deceased minor, and further held, that in this case, the mother, having had the exclusive custody and care of the deceased minor, takes the entire estate to the exclusion of the father.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by William Sockey against Tom Ellis and E. Dunlap. Judgment for defendants, and plaintiff brings error. Affirmed.

Eddleman & Sneed and Holly & Means, for plaintiff in error.

Brown, Brown & Williams, for defendants in error.

Opinion by JONES, C. This action was instituted in the district court of Carter county by the plaintiff in error, as plaintiff,

against the defendants in error, as defendants, to recover possession of certain lands held and possessed by the defendants, and damages for the wrongful detention of same. Upon the trial of the case to the court without the intervention of a jury, judgment was rendered in favor of the defendants and against the plaintiff, adjudging the defendants to be the legal owners of said lands under a valid conveyance theretofore duly executed and delivered to said defendants.

The case was tried on an agreed statement of facts, which covered practically every issue raised in the trial of the case save one, of which there was evidence offered in support of the fact, as disclosed by the record, showing that the lands in controversy were the allotment of Homer Sockey, a duly enrolled member of the Choctaw Tribe of Indians, who as such was allotted the lands in controversy; that he died in November, 1918, at the age of about 14 years, unmarried, intestate, and without issue, leaving him surviving his father, William Sockey, the appellant here, and his mother, Josephine Sockey, the grantor of the appellee; that prior to statehood, Josephine Sockey and William Sockey, mother and father of the deceased, were legally divorced; that the custody of said Homer Sockey, then a minor, was not awarded to either the father or mother; that afterwards the said Homer Sockey and his mother, Josephine Sockey, lived with one Oscar Davis, brother-in-law of Josephine and the uncle of Homer Sockey. The evidence offered tends to show that William Sockey, the father, deserted Josephine Sockey prior to the birth of Homer Sockey, which according to the record must have been about 1904, and never lived with the mother thereafter, and never lived with the child at any time during his life, and contributed nothing to the support or maintenance of either the wife or child, from the time he deserted them in 1904 until the death of the child in 1918.

From the judgment of the trial court, the appellant prosecutes this appeal, and assigns various specifications of error, but the principal contention made is to the effect that the appellant, William Sockey, the father of the deceased allottee, was under the law the sole and only heir of his son, Homer Sockey, deceased, and took the allotment to the exclusion of the mother, Josephine Sockey. This contention is based on a portion of section 6895, Wilson's Statutes of Oklahoma 1903, as follows:

"If decedent leave no issue, nor husband, nor wife, the estate must go to the father" —which was in full force and effect at the time of the admission of Oklahoma to statehood, and at the time the Act of Congress of May 27, 1908, took effect, generally known as the Restriction Bill.

The law of the state of Oklahoma in force at the time of the death of Homer Sockey in 1918, being subdivision 3, section 8418, Rev. Laws 1910, is as follows:

"If the deceased, being a minor, leave no issue, the estate must go to the parents equally, if living together; if not living together, to the parent having the care of said deceased minor."

Appellant contends that the first provision of the statute quoted should apply, being the law in force at the time the Act of Congress, May 27, 1908, section 9, took effect, which, among other things, provides:

"That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die, * * * the lands shall then descend to the heirs according to the law of descent and distribution of the state of Oklahoma. * * *"

The appellant contends, under this provision of the federal act, that Congress intended to and did adopt the specific section and chapter of the Oklahoma Statutes as found in Wilson's Statutes of 1903, then in force, and that no modification, revision, or amendment of said statute is effective or applicable in dealing with members of the Five Civilized Tribes, and calls attention to certain rules of law and some authorities (Chapple v. Gidney, 38 Okla. 596, 134 Pac. 859; Chapple v. Gidney, 60 U. S. [L. Ed.] 910; Perryman v. Woodward, 37 Okla. 792, 133 Pac. 244; Ardmore Coal Co. v. Bevil, 10 C. C. A. 41), which appellant contends should control; but we think there is a distinction between the authorities cited and the instant case. It will be noted that it frequently occurs that Congress, in adopting or referring to the statutes of the various states of the Union, does so by specific reference to the act, section, and chapter, and while this fact does not appear in all of the authorities cited, we think it is evident that a distinction should be made where Congress adopts a specific act, chapter, or section of the laws of a state, and where it adopts or puts in force the law of a state. It will be noted that the provision of the Act of Congress here under consideration, provides that the lands shall "then descend to the heirs according to the law of descent and distribution of the state of Oklahoma." This act was passed by Congress with knowledge of the provision of the Enabling Act, which authorizes the organization of a state government and the admission of Oklahoma

into the Union as a state, and which provides in article 13 thereof:

" * * *. That the laws in force in the territory of Oklahoma, as far as applicable, shall extend over and apply to said state until changed by the Legislature thereof." 34 Stat. L. 275.

Section 21 of the Enabling Act provides:

"* * * All laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state. * * *" 34 Stat. L. 277.

Section 2 of the Schedule to the Constitution of Oklahoma provides:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitations or are altered or repealed by law."

These provisions clearly recognize the right and power of the state to amend its laws.

The law as contained in Wilson's Statutes of 1903, which was in force at the time the Act of Congress was passed, and which the appellant relies upon in this case, was no longer the law of the state of Oklahoma, and hence, the language of the Act of Congress in putting in force and adopting the laws of the state of Oklahoma is not subject to such construction as would carry forward and retain in full force and effect the law which has been repealed by an Act of the Legislature, which is in accord with the provisions of the Enabling Act and the Constitution of the state of Oklahoma, which was in full force and effect at the time the Act of Congress of 1908 was passed, and we think it fair to presume that Congress had in mind the above provisions and did not intend to retain in full force and effect any particular law of the state pertaining to descent and distribution, which might thereafter be repealed or revised. The rule that should govern in construing acts or statutes of this character, we think, is well expressed in Lewis' Sutherland, Statutory Construction, vol. 2 (2nd Ed.) sec. 405, page 789, wherein will be found a discussion of the adoption of the statutes from other states by particular or general reference, and after a discussion of the proper construction to be given where the reference is special or particular, such as is contended for by the appellant in this case,

there will be found a discussion of the construction to be given where the reference made to the statute adopted is general as follows:

"* * * There is another form of adoption wherein the reference is not to any particular statute or part of a statute, but to the law generally which governs a particular subject. The reference in such case means the law as it existed from time to time or at the time the exigency arises to which law is to be applied. The Supreme Court of Illinois says, 'Where, however, the adopting statute makes no reference to any particular act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken, or proceedings are resorted to"

—citing the case of Culver v. People, 161 Ill. 89, 43 N. E. 812; Cole v. Circuit Judge, 106 Mich. 692, 64 N. W. 741; Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100, and numerous other authorities adhering to the doctrine announced in the text.

In the Gaston-Lamkin Case, supra, the Supreme Court of Missouri said:

"But when the subsequent statute, being a general one, does not refer specifically to a former statute, for the rule of procedure to be followed, but generally to the established law, by some such expression as 'the same as is provided for by law, in given cases,' then the act becomes a rule for future conduct to be found when needed by reference to the law governing such cases at the time when the rule is invoked."

In the case of Jones v. Dexter, 8 Fla. 276, a discussion of a case very similar to the instant case will be found, wherein the court was called upon to construe an act which contains the following language:

"That, after all debts and legacies have been paid, the property remaining in the hands of the executor or administrator shall be distributed according to the provisions of the law regulating descents."

The law of descent was subsequently amended and the same question arose before the Supreme Court of Florida as the one which now confronts this court, and the court in passing upon the language above quoted said:

"The Act of 1829, which adopts the provisions of the law regulating the descents as furnishing the rule for the distribution of personal estate, was intended to refer to any law of descents which might be in force at the time the rights to the distribution might become vested."

The authorities cited discuss and distinguish between enactments that specifically refer to some particular act, chapter, or section of the statute adopted, and enactments that merely refer to the law of the state in general terms, as was done in this instance, the language used being "according to the .law of descent and distribution of the state of Oklahoma," and these authorities, we think, leave no doubt as to the proper construction which should be given in this case, and the law as amended governs.

The next proposition urged by the appellant, which is in conformity to the second count of his petition, is that if he is not entitled to recover the entire allotment as the sole and only heir, he should be permitted to recover one-half under the provision of the statutes as they now exist, but in view of the fact that there is conclusive evidence to support the judgment of the court based upon that provision of the statute providing that the estate shall go ro the parent having had the care of said deceased minor, and the record in this case showing conclusively that the mother had the exclusive custody of the deceased at all times during his life, we therefore find no merit in this contention, and find that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 524, § 96. (2) 18 C. J. p. 829, § 41.