TULSA HERALD, ALL CHURCH PRESS, v. NATIONAL MUTUAL CASUALTY CO.

No. 32505. June 24, 1947.

*182 P. 2d 496.*

Lashley & Rambo and E. M. Connor, all of Tulsa, for plaintiff in error.

W. L. Coffey, of Tulsa, for defendant in error.

RILEY, J. This is an appeal from a judgment for plaintiff (defendant in error, National Mutual Casualty Company) in an action in unlawful detainer. The action was commenced in a justice of the peace court to recover possession of office rooms 301 and 302 of the National Mutual Building in Tulsa. Trial in the justice of the peace court resulted in a verdict for defendant; plaintiff appealed to the common pleas court where a jury was impaneled and counsel for both parties made their opening statements. Thereupon counsel for plaintiff moved the court for judgment on the opening statement of defendant's counsel, and counsel for defendant moved for judgment on the opening statement of plaintiff's counsel. The parties agreed that neither would offer further evidence and that the sole question presented to the trial court was one of law.

The jury was discharged and certain written instruments of record were submitted to the trial court for consideration in connection with the opening statements. These documents consisted of: (1) a real estate lease between plaintiff and defendant for Rooms 309 and 310, National Mutual Building; (2) letter dated December 27, 1940, from plaintiff to defendant, purporting to give defendant an option to renew and extend the original lease; (3) another letter of the same date from plaintiff to defendant pertaining to a proposed removal by defendant from room 309 to 311; (4) supplemental agreement relating to rooms 310 and 311; (5) letter or memorandum, dated July 15, 1943, from plaintiff to defendant company; (6) letter from L. A. Swain, building manager for plaintiff, to defendant; (7) letter, dated October 11, 1945, from defendant to L. A. Swain, building manager for National Mutual Casualty Building.

The trial court thereupon rendered judgment for plaintiff, and defendant appealed. The sole question presented on appeal is whether defendant had a valid option to extend or renew a five-year lease on the rooms here involved.

The original written lease under which defendant went into possession of rooms 309 and 310 is dated November 9, 1940. By its terms it leased rooms 309 and 310 in plaintiff's building to defendant for a term of five years for a total consideration of $2,100, payable in monthly installments of $35 each. The lease was signed:

"The National Mutual Casualty Company,

"By George C. Massey,
          "Building Manager

     "Lessor

"Douglas Tomlinson
     "Lessee

"Publisher, Tulsa Herald."

The record discloses that about December 27, 1940, plaintiff had a request from another tenant, Central Petroleum Company, for additional space, and particularly room 309, one of the rooms occupied by defendant and covered by its lease. Plaintiff requested defendant to vacate room 309 and take in its place room 311 in order to accommodate plaintiff and Central Petroleum Company. Thereupon plaintiff, through its building manager, George C. Massey, wrote defendant the letter of December 27, 1940, wherein he related to defendant plaintiff's desire for room 309 and

the reason therefor, and in said letter stated:

"If agreeable with you, I will add room 311 to your lease at the same figure and the room will be painted and venetian blinds added. I understand that you have this week added a built in cabinet in room 309 and it would have to be taken out and reset in room 311. Also you have a straight line telephone in room 309.

"The Central Petroleum Company have agreed to pay your expense of this move, an estimated cost of $15.00 to $20.00."

The opening statements of both parties agree that defendant consented to the move and later was moved from room 309 to 311, and on the same date, plaintiff, by its building manager, wrote defendant as follows:

"Gentlemen:

"This letter will serve as your option to renew and extend your present lease at its expiration for an additional five years.

"If you elect to exercise said option you will give lessor notice (30) thirty days before expiration of said lease.

"Yours truly,
"The National Mutual Bldg.
"By Geo. C. Massey,
"Building Manager."

On January 15, 1941, plaintiff, by its building manager, George C. Massey, and defendant executed a written agreement modifying the original lease by striking room 309 and substituting therefor room 311, and further providing:

"All other terms and conditions of said lease shall remain in full force and effect, it being the intention hereby to substitute room 311 for room 309."

Later, about July, 1943, the plaintiff company wanted possession of rooms 310 and 311 to make room for expansion of Chandler-Frates Company, a corporation. Mr. Frates, president of plaintiff corporation, was also president of Chandler-Frates Company. Some conversation appears to have been had with respect to the matter, and on July 15, 1943, plaintiff, by its building manager, Massey, submitted to defendant, in writing, the following proposition:

"RE: Move from your present rooms into 301 & 302.

"Please refer to our previous conversations regarding your move in order to make room for expansion of the Chandler-Frates Co.

"As previously agreed with you and of course with the approval of Mr. Tomlinson your Ft. Worth Manager, The Tulsa Herald Publishing Company will be moved from rooms 310 & 311 into rooms 301 and 302 in this building at no expense to them. The new suite will be overhauled to conform to your present requirements and carpet will be installed as per your agreement with Chandler-Frates Company.

"There will be no change in your lease except the change in room numbers.

"In your present rooms you have 500 sq. feet of space and in the new rooms you will have 545 sq. feet or an added footage of 45.

"National Mutual Building,
"By Geo. C. Massey
"Building Manager."

It was endorsed:

"OK—Douglas Tomlinson,

"Publisher Tulsa Herald."

The record shows and it is agreed that the second move was made accordingly and that defendant thereafter occupied and paid rent on rooms 301 and 302 until August, 1944, at which time L. A. Swain succeeded George C. Massey as building manager for plaintiff.

In October, 1944, Horace Jones, manager for defendant company, being under the impression that defendant's lease would expire November 15th of that year, wrote Mr. Swain a letter calling attention to the option to extend defendant's lease another five years and

32

stating that a copy of the agreement to that effect was attached, and then stated:

"This letter is the required notice of intention to renew the lease for an additional five years."

On October 6, 1944, L. A. Swain, as building manager for plaintiff, wrote Mr. Jones a letter acknowledging receipt of the notice of intention to renew the lease on the defendant's quarters and then stated:

"Our records disclose that your lease does not expire until next year and at the termination of your lease, there is no option for renewal.

"We believe you to be in error in this assumption."

Defendant continued to occupy the rooms, paying the rent, until about October, 1945, when it again gave plaintiff's building manager notice of its intention to exercise its option to renew the lease for a period of five years. This action was then commenced November 19, 1945, four days after the five-year lease expired.

Plaintiff's contention is that the five-year lease under which defendant went into possession of rooms 309 and 310 was invalid as to plaintiff under the statute of frauds and particularly subdivision 5, sec. 136, 15 O. S. 1941, which provides that any agreement for the leasing for a longer period than one year, of real property, is invalid unless the same, or some note or memorandum thereof be in writing subscribed by the party to be charged, or by his agent, and such agreement, if made by an agent of the party to be charged, is invalid unless the authority of the agent be in writing, subscribed by the party sought to be charged.

It was admitted in the opening statement of counsel for defendant that Massey, the agent of plaintiff, did not have authority in writing from plaintiff to execute the lease, and it does not appear that he had such authority in writ-ing to grant the option to renew or extend the lease. There could be no doubt that in the beginning the five-year lease to defendant and the option to renew were invalid as being within the statute of frauds.

But defendant contends that the statute of frauds is not controlling in this case because the lease contracts involved were fully executed. This is clearly true as to the original lease. Both parties recognized it for the full period of five years. Defendant paid and plaintiff received the stipulated rental without question. It is well settled that a contract, invalid under the statute of frauds, may be validated by full or part performance, such as payment of the purchase price of real property and taking possession under an otherwise invalid contract or agreement. The validity of the lease itself as to the five-year term is now beyond question. The issue then arises whether the option to renew has been so fully or partially executed as to take it out of the statute of frauds.

The statute of frauds is inapplicable where the purchaser has paid part of the consideration and taken possession of the property with the knowledge and consent of the seller. Pepis v. Red Bank Oil Co., 170 Okla. 189, 44 P. 2d 846; Duncan v. Kelley, 103 Okla. 74, 229 P. 425; Ganas v. Tselos, 157 Okla. 107, 11 P. 2d 751; Adams v. White, 40 Okla. 535, 139 P. 514; Perryman v. Woodward, 37 Okla. 792, 133 P. 244.

Taking possession together with full or part payment of the purchase price is a sufficient part performance; the amount of the part payment being immaterial. Bowker v. Linton, 69 Okla. 280, 172 P. 442.

In the instant case defendant had full possession of the two rooms originally covered by the lease. Plaintiff desired possession of one of the rooms to accommodate itself and another tenant. In consideration of defendant surrendering possession of one of the rooms

and taking another, plaintiff's agent executed the option to renew; there was a good consideration. Any benefit conferred or agreed to be conferred upon the promisor by another person, to which promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such other person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promisor, is a good consideration for a promise. 15 O. S. 1941 § 106.

Generally, any benefit to promisor or any loss or detriment to promisee constitutes sufficient consideration for the promise. Dunn v. Thompson, 156 Okla. 169, 9 P. 2d 959.

There was nothing illegal, immoral, or contrary to public policy in the agreement in question. Plaintiff got its desired benefit from its promise and defendant continued to use and occupy the substituted rooms for nearly three years, when a second move was requested; the defendant complied therewith and took possession of the two rooms involved in this action, and held same under its original lease until the expiration of the full term of the lease. It can hardly be said that plaintiff had no knowledge of the moves from room to room by defendant and the circumstances thereof, since Mr. Frates, who was president of plaintiff company, was also president of the Chandler-Frates Company which moved into rooms 310 and 311 when defendant moved out.

There was a sufficient part performance of the agreement (to move, coupled with the option to extend the lease) to take it out of the statute of frauds. Plaintiff cites a number of authorities in support of its contention that the contract was valid. But all the cases cited involve contracts which were in themselves illegal or against public policy. These authorities are inapplicable to the present contracts which in themselves contain nothing inherently violative of the law. Under the rule applicable, the option to renew, as a whole, is valid and enforceable.

Reversed, with directions to render judgment for defendant.

