**WOLFE et al. v. PHILLIPS et al.**

No. 3740.

United States Court of Appeals
Tenth Circuit.

Jan. 27, 1949.

Rehearing Denied Feb. 23, 1949.

482

Carloss Wadlington, of Ada, Okl. (Turner M. King, of Ada, Okl., on the brief), for appellants.

Jack T. Conn, of Ada, Okl. (Kerr, Lambert, Conn & Roberts, of Ada, Okl., on the brief), for Oren Phillips and Janie Phillips.

Thompson & Braly, of Ada, Okl., for Walter Mayer and Bruno Mayer.

Roff & Roberts, of Wewoka, Okl., for Harry H. Diamond, Inc.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

Eula Wolfe, nee Perry, Salina Scott, Lena McLane, now Clark, and Mary Walker, nee Scott,[1] brought this action against Oren and Janie Phillips, Harry H. Diamond, Inc., and Walter and Bruno Mayer to recover possession of a tract of land situated in Pontotoc County, Oklahoma, to quiet title thereto, and for an accounting of rents and profits.

The action was originally commenced in the district court of Pontotoc County. Notice of the pendency of the action was served upon the Superintendent for the Five Civilized Tribes and it was removed by the United States to the United States District Court for the Eastern District of Oklahoma, in accordance with the Act of Congress of April 12, 1926.[2] Thereafter, the United States filed a complaint in intervention. Before the case came on for hearing, the United States, with leave of court, withdrew its complaint in intervention.

The tract of land embraces 130 acres allotted and patented to Mollie McLane, nee Henderson, a full-blood Chickasaw Indian, enrolled opposite Roll No. 1061, as her homestead allotment.

The parties stipulated the following facts, in addition to those above stated:

A tax exemption certificate was duly executed and approved by the Secretary of the Interior and filed for record in the office of the county clerk of Pontotoc County, November 21, 1930. It was filed also in the office of the Superintendent for the Five Civilized Tribes. Such land remained tax exempt and restricted during the life of the allottee, Mollie McLane.

Mollie McLane died testate, while a resident of Pontotoc County, on February 9, 1935. Her will was duly admitted to probate by the county court of Pontotoc County, on August 31, 1935. By her will, such land was devised to her husband, Ainusiah McLane, and to her sons, George and King McLane, in equal shares. Each of the devisees was a Chickasaw Indian of full-blood.

Ainusiah McLane died testate, while a resident of Pontotoc County, on April 22, 1935. His will was duly admitted to probate by the county court of Pontotoc County, February 11, 1936. By such will, he devised his undivided one-third interest in such land to Mary Walker, nee Scott, a Chickasaw Indian of three-fourths blood, enrolled opposite Roll No. 1062.

On January 6, 1936, Mary Walker executed a mineral deed purporting to convey to the Mayers an undivided one-sixth interest in the minerals lying in and under such land. That deed was not approved by any county court nor by the Secretary of the Interior.

---

[1] Hereinafter called plaintiffs.

[2] 44 Stat. 239.

On May 8, 1936, the district court of Pontotoc County in a cause in which Mary Walker and King McLane were plaintiffs, and George McLane, a minor, was defendant, entered judgment for the partition of such land. The Mayers were not parties to the partition action. Notice of the pendency of the partition suit was not served upon the Superintendent for the Five Civilized Tribes and the United States was not made a party thereto. Pursuant to the order of the district court of Pontotoc County, entered in such partition proceeding, such land was sold at partition sale and a sheriff's deed executed in favor of C. Rounsavall, on November 25, 1936. Such deed was filed for record in the office of the county clerk of Pontotoc County, on November 25, 1936, and recorded in Book 220, at page 203.

On August 6, 1942, Rounsavall executed and delivered to Oren and Janie Phillips a warranty deed purporting to convey to them the entire estate in such land.

On September 26, 1940, King McLane died intestate, leaving as his surviving heirs-at-law, Lena McLane, George McLane, Mary Walker, Salina Scott, and Beulah Scott. On January 25, 1941, George McLane died intestate, leaving surviving as his heirs-at-law, Mary Walker, Salina Scott, and Beulah Scott. On October 3, 1942, Beulah Scott died intestate, leaving surviving as her sole heir-at-law, Eula Wolfe, nee Perry.

Eula Wolfe, nee Perry, is a Chickasaw Indian of the full-blood, enrolled opposite Roll No. 316. Salina Scott is an unenrolled Chickasaw Indian of seven-eighths blood. Beulah Scott was an unenrolled Chickasaw Indian of seven-eighths blood. Lena McLane is an unenrolled Chickasaw Indian of three-fourths blood.

In addition to the facts stipulated, the trial court found the following facts:

That J. M. Sallee was duly appointed guardian of the person and estate of George McLane, a minor, the defendant in the partition suit, by order of the county court of Pontotoc County, November 14, 1935, and at all times during the pendency of the partition suit, Sallee was the duly qualified and acting guardian of the person and estate of such minor.

That Rounsavall, to whom the sheriff's deed was executed pursuant to the order of the district court in the partition suit, on December 7, 1936, executed a mortgage on such land to Sallee to secure a note in the principal sum of $1000, the amount paid for such land at such partition sale, and that such mortgage was filed for record in the office of the county clerk of Pontotoc County, December 8, 1936, and released August 6, 1942, when Rounsavall executed his warranty deed to Oren and Janie Phillips.

That on November 26, 1936, the district court of Pontotoc County made an order in the partition proceedings approving the sheriff's sale and directing the execution of a sheriff's deed to Rounsavall and the distribution of the proceeds of such sale. That it directed one-third thereof be distributed to Sallee as guardian of George McLane.

That Rounsavall was the bidder at the sheriff's partition sale; that pursuant to his bid, the sheriff's deed was issued to him; that he took possession of the land and continued in possession thereof until his conveyance to Oren and Janie Phillips on August 6, 1942.

That Harry H. Diamond, Inc., is the holder of valid and subsisting oil and gas leases on such land, one running from Oren and Janie Phillips and one running from the Mayers.

That Oren and Janie Phillips, without admitting the validity of the deed from Mary Walker to the Mayers, were willing to concede that the Mayers owned an undivided one-sixth interest in the minerals in such land.

That Oren and Janie Phillips, after acquiring the deed dated August 6, 1942, went into possession of such land and have been in possession thereof at all times since that date and were in possession of such land at the time of the trial.

The trial court concluded that 12 Okl.St. Ann. § 93, as amended by the Session Laws of Oklahoma, 1945, p. 37, § 1, was applicable to the plaintiffs in the instant case by virtue

484

of § 2 of the Act of April 12, 1926,[3] and barred them from asserting any right, title, or interest in or to such land adverse to the claims of the defendants.

. By its judgment, the trial court adjudged that Oren and Janie Phillips were the owners of the surface rights in such land and of an undivided five-sixths interest in the minerals therein; that the Mayers were the owners of an undivided one-sixth interest in the minerals in such land; quieted the title of such owners against the plaintiffs; and adjudged that such land was subject to valid oil and gas mining leases in favor of Harry H. Diamond, Inc. The plaintiffs have appealed.

█ It will be observed that § 2 of the Act of April 12, 1926, set out in Note 3, provides that the statutes of limitations of the State of Oklahoma shall be applicable

to and shall have full force and effect against all restricted Indians of the Five Civilized Tribes and against their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the State of Oklahoma, and may be pleaded in bar of any action brought by any such Indian, his heirs or grantees, or by the United States or any other party for the benefit of such Indian, his heirs or grantees, to the same extent as though such action were brought by or on behalf of any other citizen of such state.

It seems to us that the manifest intent and purpose of such § 2 was to make the statutes of limitations of the State of Oklahoma applicable to Indians of the Five Civilized Tribes, their heirs or grantees, in such a way that when a plea of limitations should be set up against an action

---

3 Section 2 of the Act of April 12, 1926, 44 Stat. 239, 240, provides:

"The statutes of limitations of the State of Oklahoma are hereby made and declared to be applicable to and shall have full force and effect against all restricted Indians of the Five Civilized Tribes, and against the heirs or grantees of any such Indians, and against all rights and causes of action heretofore accrued or hereafter accruing to any such Indians or their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the State of Oklahoma, and may be pleaded in bar of any action brought by or on behalf of any such Indian, his or her heirs or grantees, either in his own behalf or by the Government of the United States, or by any other party for his or her benefit, to the same extent as though such action were brought by or on behalf of any other citizen of said State: Provided, That no cause of action which heretofore shall have accrued to any such Indian shall be barred prior to the expiration of a period of two years from and after the approval of this Act, even though the full statutory period of limitation shall already have run or shall expire during said two years' period, and any such restricted Indian, if competent to sue, or his guardian, or the United States in his behalf, may sue upon any such cause of action during such two years' period free from any bar of the statutes of limitations."
12 Okl.St.Ann. § 93, as amended by the

Session Laws of Oklahoma, 1945, page 37, § 1, in part reads:

"Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter;

"(1) An action for the recovery of real property sold on execution or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed pursuant to partition proceedings, or other judicial sale, when brought by, or on behalf of, the execution debtor or former owner or his or their heirs, or any person claiming under him or them by title acquired after the date of the judgment within five (5) years after the date of the recording of the deed made in pursuance of the sale or proceeding, or within five (5) years after the date of the entry of the final judgment of partition in kind where no sale is had in the partition proceedings; provided, however, that where any such action pertains to real estate sold, conveyed or partitioned by judgment, pursuant to partition proceedings, or by other judicial sale, and would at the passage of this Act be barred by the terms hereof, such action may be brought within one (1) year after the passage of this Act; * * *."

Before the amendment of 1945, the applicable limitation period for recovery of real estate sold or conveyed pursuant to partition proceedings was 15 years. See original § 93 before amendment of 1945.

brought by any such Indian, his heirs or grantees, or brought by the United States or any other party in his or their behalf, the result would be the same as it would be if such Indian, heir, or grantee were a non-Indian citizen of Oklahoma. Such intent and purpose would not be accomplished if such § 2 were construed to make applicable to such Indians, their heirs or grantees, only the statutes of limitations of the State of Oklahoma in force at the time of the enactment by Congress of such § 2 and not to make applicable the statutes of limitations of the State of Oklahoma as thereafter amended, modified, or supplemented by future legislative enactments.

By such § 2, Congress did not by reference adopt the statutes of limitations of the State of Oklahoma as Federal law. What it did was to consent and provide that restricted Indians of the Five Civilized Tribes, their heirs or grantees, should be subject to the statutes of limitations of the State of Oklahoma as state law.[4] Congress did not intend that such state law should be static. Rather, it intended to consent and provide that the statutes of limitations of the State of Oklahoma as then in force and as they should thereafter be amended, modified, or supplemented should be applicable to such restricted Indians, theirs heirs or grantees. Otherwise, such statutes would not be applicable to such Indians, their heirs or grantees, to the same extent and effect as in the case of any other citizen of Oklahoma, or to the same extent as though such action were brought by or on behalf of any other citizen of Oklahoma; that because if such § 2 were construed to make applicable only the statutes of limitations of the State of Oklahoma in force at the time of its enactment and the statutes of limitations of the State of Oklahoma were thereafter amended, modified, or supplemented, one statute of limitations would apply to restricted Indians and another statute of limitations would apply to other citizens of such state.

Since such § 2 made the statutes of limitations of the State of Oklahoma applicable to Indians of the Five Civilized Tribes, their heirs or grantees, as state law, and did not adopt such statutes of limitations as Federal law, no question of unconstitutional delegation of legislative power by Congress is involved.

The power of Congress to legislate with respect to its Indian wards is paramount and plenary [5] and there can be no doubt of its power to enact such § 2 as we have construed it.

A state may constitutionally shorten the periods of limitation fixed by previously existing statutes and make the amended statute applicable to existing causes of action, provided it affords a reasonable time within which suits for such existing causes of action may be commenced.[6] What is a reasonable time is for the determination of the legislature and the court will not interfere with the legislative discretion, unless the time allowed is so manifestly insufficient that it amounts to a denial of justice.[7] Section 93, as amended, set out in Note 3, provided "that where any such

---

[4] Comparable statutes have been so construed. See Stewart v. Keyes, 295 U.S. 403, 415, 55 S.Ct. 807. 79 L.Ed. 1507, dealing with § 6 of the Act of May 27, 1908, 35 Stat. 312, 313; Jackson v. Harris, 10 Cir., 43 F.2d 513, 516, and Sockey v. Ellis, 112 Okl. 116, 240 P. 87, 88, dealing with § 9 of the Act of May 27, 1908, 35 Stat. 312. 315.

[5] Winton v. Amos, 255 U.S. 373, 391, 41 S.Ct. 342. 65 L.Ed. 684; Sizemore v. Brady, 235 U.S. 441, 449, 35 S.Ct. 135, 59 L.Ed. 308; Lone Wolf v. Hitchcock, 187 U.S. 553, 565, 23 S.Ct. 216, 47 L.Ed. 299; Williams v. Johnson, 239 U.S. 414, 420, 36 S.Ct. 150, 60 L.Ed. 358; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 887, and cases there cited; McElroy v.

Pegg, 10 Cir., 167 F.2d 668, 671; Mashunkashey v. Mashunkashey, 191 Okl. 501, 134 P.2d 976, 978, 979.

[6] Wheeler v. Jackson, 137 U.S. 245, 255, 11 S.Ct. 76, 34 L.Ed. 659; Turner v. New York, 168 U.S. 90, 94, 18 S.Ct. 38, 42 L.Ed. 392; United States v. Morena, 245 U.S. 392, 397, 38 S.Ct. 151, 62 L.Ed. 359; Atchafalaya Land Co. v. Williams Cypress Co., 258 U.S. 190, 196, 197, 42 S.Ct. 284, 66 L.Ed. 559; Meyer v. City of Eufaula, 10 Cir., 154 F.2d 943, 946.

[7] Wilson v. Iseminger, 185 U.S. 55, 63, 22 S.Ct. 573, 46 L.Ed. 804; Terry v. Anderson, 95 U.S. 628, 633, 24 L.Ed. 365; McGahey v. Virginia, 135 U.S. 662, 705, 10 S.Ct. 972, 34 L.Ed. 304.

action pertains to real estate sold, \* \* \* pursuant to partition proceedings, \* \* \* and would at the passage of this Act be barred by the terms hereof, such action may be brought within one (1) year after the passage of this Act."

■ The action brought by plaintiffs would have been barred on November 25, 1941, by the terms of the amendatory act. Plaintiffs, therefore, had one year from the date of the passage of the amendatory act within which to bring this action. One year afforded plaintiffs full opportunity for resort to the courts for the enforcement of the right upon which the limitation was intended to operate and was a reasonable time.

■ The five-year period of limitation fixed by § 93, as amended, began to run upon the recording of the deed to Rounsavall on November 25, 1936, and the instant action became barred on November 25, 1941, irrespective of whether such deed was valid or void.[8] Therefore, we find it unnecessary to determine the conflicting contentions of the parties with respect to the validity of such deed.

Likewise, since Oren and Janie Phillips, without admitting the validity of the mineral deed from Mary Walker to the Mayers, consented that the Mayers might be adjudged to be the owners of a one-sixth interest in the minerals in such land, we deem it unnecessary to pass on the validity of that deed.

Plaintiffs contend that the court erred in not making a finding as to whether Sallee, the guardian of George McLane, was the bidder for and real purchaser of the land at the partition sale and erred in refusing to reopen the case to permit the plaintiffs to introduce further evidence on that issue.

In their amended petition, plaintiffs alleged that at the partition sale, Sallee was the only bidder; that he made a bid of $1000 in the name of Rounsavall; that Sallee was "the actual bidder and purchaser" at such sale; that the sheriff's deed was taken in the name of Rounsavall at the request of Sallee; and that Rounsavall took the title to the land for the use and benefit of Sallee.

In their answer, Oren and Janie Phillips denied those allegations and alleged in the alternative that if such allegations were true, they were purchasers of the land for value and without notice. Harry H. Diamond, Inc., affirmatively alleged that Rounsavall was the purchaser at such partition sale.

■ On the issues thus presented, the court found:

"One of the contentions of the plaintiffs \* \* \* was that \* \* \* Sallee \* \* was in fact the purchaser of said lands at the sheriff's sale; that he was the only bidder at said sale, and that although the deed was taken in the name of \* \* \* Rounsavall, \* \* \* Sallee was in truth and in fact the purchaser. On this issue I find against the contentions of the plaintiffs. I find from the evidence that \* \* \* Rounsavall was the bidder at said sale, and that pursuant to his bid, the Sheriff's deed was issued to him; that he took possession of said lands and continued in possession until the date he h[s]old the lands to Phillips on August 6th, 1942."

The evidence affords substantial support for the finding of the trial court and it is not clearly erroneous. It is, therefore, binding on this court.

In their motion to reopen the case, plaintiffs stated they desired to take the deposition of Rounsavall and introduce it at a future hearing; and that if Rounsavall's testimony were taken, he would testify that Sallee furnished the money for the purchase of the land at the partition sale, and was the actual purchaser of the land, and further stated that they were surprised at the testimony of Lambert, a witness called by the defendants, to the effect that Rounsavall was the bidder and purchaser at such sale.

The record discloses that on April 2, 1948, plaintiffs gave notice that on April 8, 1948, they would take the deposition of Rounsavall and others at Stonewall, Oklahoma; that Rounsavall appeared pursuant

---

[8] Stewart v. Keyes, 167 Okl. 531, 30 P.2d 875, 877.

to notice; and that plaintiffs had full opportunity to take his deposition, but failed so to do.

 Plaintiffs knew that their allegation that Sallee was the bidder and purchaser at the partition sale was denied in the answers. Notwithstanding that, they failed to take the deposition of Rounsavall. Such being the facts, we cannot say that the trial court abused its discretion in refusing to reopen the case.[9]

The judgment is affirmed.

---

[9] Render v. Arkansas Valley Trust Co., 8 Cir., 196 F. 1, 4; Postal Telegraph-Cable Co. v. Northern Pacific Ry. Co., 9 Cir., 211 F. 824, 827.