**NATIONAL INDIAN YOUTH COUNCIL, INTERMOUNTAIN INDIAN SCHOOL CHAPTER, an unincorporated association, et al., Plaintiffs-Appellants,**

**v.**

**Louis R. BRUCE et al., Defendants-Appellees.**

**No. 73–1168.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 14, 1973.

Decided Sept. 26, 1973.

Richard L. Young, Native American Legal Defense & Education Fund, Inc., Albuquerque, N. M., for plaintiffs-appellants.

Robert L. Klarquist, Dept. of Justice, Washington, D. C. (George R. Hyde, Dept. of Justice, Washington, D. C., C. Nelson Day, U. S. Atty., H. Ralph Klemm, Asst. U. S. Atty., Wallace H. Johnson, Asst. Atty. Gen., Salt Lake City, Utah, on the brief), for defendants-appellees.

Before BARNES,* BREITENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Plaintiffs below appeal from the dismissal of their amended complaint wherein they sought to close Intermountain School, a Navajo boarding school located in Brigham City, Utah, operated by the Bureau of Indian Affairs (BIA) of the Department of the Interior.

Appellant National Indian Youth Council (NIYC), Intermountain School Chapter, was organized on January 28, 1971. It is a member of a national non-profit corporation with chapters located at BIA boarding schools and other schools across the United States. NIYC was organized to combat by peaceful, non-violent means, the discrimination, racism, and other social problems affecting Indians in general and Navajos at Intermountain School in particular. Appellant Teddy K. Austin and the other individual appellants were students at Intermountain School at the time this action was brought. They are four of the "16–30" NIYC members at Intermountain School.

The individual defendants-appellees are officials and employees of the BIA, with the exception of E. A. Leopardi, who is an employee of the Public Health Service.

Intermountain School was created by Congress, Act of March 17, 1949, c. 22, 63 Stat. 14. The premises include what was formerly Bushnell General Hospital, a World War II military facility. The 1949 Act transferred the premises from the War Assets Administration to the Department of the Interior. Attendance at the school is predicated on a written application submitted by a student or guardian accompanied by the parents' consent. Approximately 1,500 Navajo students were enrolled at the school when this action was commenced. The school has been endorsed by the Navajo Tribal Educational Committee "as long as the need exists" for educating "retarded two or more grades" students at off-reservation federal schools.

The original complaint alleged that the operation of Intermountain School was in violation of the Navajo Treaty of 1868,[1] that it was racially segregated in violation of the Fifth Amendment, and that many of the practices and policies of the school were violative of appellants' constitutional rights. This complaint was dismissed with leave to amend. In its order dismissing, the trial court held that the suit was improper because of the plaintiffs' inability to escape the effects of the doctrine of sovereign immunity, their failure to exhaust available administrative remedies, and their failure to set forth allegations in "short and plain" statements

---

* Honorable Stanley N. Barnes, Senior Judge of the Ninth Circuit, sitting by designation.

1. Article VI of the Treaty provides:
   In order to insure the civilization of the Indians entering into this treaty, the necessity of education is admitted, especially of such of them as may be settled on said agricultural parts of this reservation, and they therefore pledge themselves to compel their children, male and female, between the ages of six and sixteen years, to attend school;

and it is hereby made the duty of the agent for said Indians to see that this stipulation is strictly complied with; and the United States agrees that, for every thirty children between said ages who can be induced or compelled to attend school, a house shall be provided, and a teacher competent to teach the elementary branches of an English education shall be furnished, who will reside among said Indians, and faithfully discharge his or her duties as a teacher.
15 Stat. 667

as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure.

The amended complaint presented seven causes of action. The first six were directed to the proposition that Intermountain School should be eliminated as a Navajo school and replaced with adequate school facilities on the reservation. The seventh was an attack on a "variety of school policies and practices which are illegal." Again the trial court dismissed, holding that the amended complaint did not overcome the effects of the doctrine of sovereign immunity and for failure to exhaust available administrative remedies. The trial court noted that the amended complaint was "for the most part, merely a restatement of the original complaint, fraught with the same errors and imprecision."

Appellants have set forth numerous allegations of error on appeal. We will consider only whether the trial court properly applied the doctrine of sovereign immunity in ordering dismissal of the amended complaint. We hold that the Court did not err. See National Indian Youth Council v. Bruce, 366 F. Supp. 313 (D.Utah 1973).

■  United States District Courts are courts of limited jurisdiction. McCord v. Dixie Aviation Corporation, 450 F.2d 1129 (10th Cir. 1971). No presumptions of federal jurisdiction exist. Commercial Security Bank v. Walker Bank & Trust Co., 456 F.2d 1352 (10th Cir. 1972). Courts may not entertain unconsented suits which, though nominally against officers of the United States, are in reality against the Government itself. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971).

The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," Land v. Dollar, 330 U.S. 731, 738 [67 S.Ct. 1009, 1012, 91 L.Ed. 1209] (1947), or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." Larson v. Domestic & Foreign Corp., supra, [337 U.S. 682] at 704 [69 S.Ct. 1457, 93 L.Ed. 1628]; Ex parte New York, 256 U.S. 490, 502 [41 S.Ct. 588, 65 L.Ed. 1057] (1921). Dugan v. Rank, supra, 372 U.S. at 620, 83 S.Ct. at 1006.

This action was clearly one against the United States, even though it was not sued in its sovereign capacity. The judgment sought would expend itself on the federal treasury. The United States did not consent to be sued. The trial court was without jurisdiction.

■  District courts are also without jurisdiction when confronted with nonjusticiable political questions, such as determining the status of Indian tribes. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Congress has exclusive plenary legislative authority over Indians and all of their tribal relations. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903). This court has recognized the plenary power of Congress to control and manage the affairs of its Indian wards. Wolfe v. Phillips, 172 F.2d 481 (10th Cir. 1949), cert. denied 336 U.S. 968, 69 S.Ct. 941, 93 L.Ed. 1119 (1949); Taylor v. Tayrien, 51 F.2d 884 (10th Cir. 1931).

■  The trial court's dismissal is further buttressed by the rule that great deference should be afforded to interpretations by the agency charged with the duty of carrying out statutory mandates. Udall, Secretary of the Interior v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed. 2d 616 (1965); Garvey v. Freeman, 397 F.2d 600 (10th Cir. 1968). Credence should be particularly accorded those who are working with treaties. Kolovrat v. Oregon, 366 U.S. 187, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961). Courts cannot substitute their judgment for that of those working with Indians, empowered to exercise discretion. Board of Com'rs of Pawnee County, Okl. v. United States, 139 F.2d 248 (10th Cir. 1943).

In no event should a court direct the manner in which discretionary acts are to be performed, nor may it direct or influence the exercise of discretion in making that decision. McQueary v. Laird, *supra*. Recognizing then, as we must, the lack of jurisdiction of the trial court in light of the sovereign immunity of the United States, the plenary legislative power of Congress over Indian affairs, and the discretionary authority delegated by Congress to those charged with carrying out statutory dictates relating to Indian affairs, we hold that the trial court did not err in dismissing the amended complaint.

Affirmed.