Nelson POTTS, Appellant,

v.

Louis R. BRUCE, Commissioner of Indian Affairs, et al., Appellees.

No. 75–1127.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 11, 1975.

Decided April 21, 1976.

**528**

Malcolm E. Wheeler, Hughes, Hubbard & Reed, Los Angeles, Cal. (Louise A. Wheeler, Los Angeles, Cal., with him on the Brief), for appellant.

Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., and Carl Strass, Atty., Dept. of Justice, Washington, D. C., with him on the Brief), for appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

The appellant Potts and two others filed this action asserting that their constitutional rights had been violated, and challenged on other grounds the action of the Commissioner of Indian Affairs in withdrawing approval of the Constitution and of the Business Committee of the Prairie Band of Pottawatomi Indians. The plaintiffs were members of the Committee when the action was taken at the request of a majority of the members of the Committee.

The trial court dismissed the action for lack of jurisdiction.

The record shows that the Business Committee of the Prairie Band had a series of internal disagreements, and a stalemate ensued. Thus no tribal business decisions within the jurisdiction of the Committee could be made, and its administration of tribal affairs came to a halt. The factions on the Committee would not attend the same meetings.

The Bureau of Indian Affairs through its local administrator advised the Committee members that in order to proceed with the business of the Tribe, it might be necessary to withdraw approval of the pre-Reorganization Act Constitution; to withdraw recognition of the Business Committee; and in the meantime for the BIA to administer the tribal affairs. It was contemplated that a group would be designated to prepare a new constitution, and elections would be held.

The BIA thereafter circulated among the members of the Business Committee a form of resolution wherein the Committee asked the BIA to take the above action. This resolution was signed by four of the seven members of the Committee. No meeting was held to formally adopt the resolution as it was considered and signed individually. The three non-signing members became the plaintiffs herein.

The resolution was acted upon by the BIA, thus the approval of the Constitution and the Committee was withdrawn. The record does not show any objections by the Tribe as an entity, and instead, acquiescence therein must be inferred.

A group was later designated to form a new Constitution. It was so drafted, and was voted upon at a tribal election and approved.

The appellant complains of the procedure used in the adoption of the resolution requesting the constitutional change. He alleges also a lack of authority of the BIA and abuse of authority in doing what it did. He asserts that his rights under the First and Fifth Amendments to the Constitution were thereby violated. Appellant had an administrative review of his complaint within the department.

■ To first consider the assertions of constitutional violations, we have carefully examined the complaint and amended complaint and can find nothing other than conclusional allegations concerning the issues. It is apparent that such vague references to certain amendments are insufficient to raise a constitutional issue. This was the basis for the decision on the constitutional issues by the trial court and by this court in *National Indian Youth Council v. Bruce,* 485 F.2d 97 (10th Cir.). Thus here as in the cited case, there was no substance to the allegations of constitutional issues to support an action grounded on 28 U.S.C. § 1331(a) or any other basis.

No member had a vested right in any particular law or in the Tribal Constitution. It had to be subject to change. The withdrawal of approval of the Constitution and of the Committee as an act by the defendants had implications as to the Tribe itself and not to individuals. The Tribe does not appear to complain nor was it joined. A tribal entity certainly existed before the advent of constitutions and it must be assumed it existed in the interim here considered.

■ Thus the constitutional rights consequences asserted in the complaint to have resulted from the BIA action certainly originated in the action by the four committee members who voted for the resolution. The problem, of course, in turn had its origin in the Committee stalemate. Again the consequences alleged in the complaint were those felt by the Tribe, and originated in the Tribe. All members were treated equally because they were members; there was no unequal treatment. The appellant in no way alleged how his right to assemble was in any way interfered with. Again he had no right to the continuance of a particular constitution for the Tribe. This is the essence of the complaint.

Thus we must conclude that no constitutional issue was presented to the trial court.

The remaining issues as to the validity of administrative action by the officials of the BIA are raised by the complaint. It was so presented as an issue which often arises, which requires some examination of the facts by the trial court before it can decide whether there is jurisdiction to proceed with the merits. We conclude that the trial court was correct in that dismissal of the action was required.

■ The causes of action, other than those purported to be based on constitutional grounds, are for all practical purposes asserted against the Tribe. The objection is made as to how the resolution asking for BIA action was adopted. This cannot be other than an issue relating to the tribal machinery and tribal administration. The majority of the Committee was in favor of the resolution and signed it. This was the best that could be achieved by way of Committee action. The Tribe acquiesced in this tribal action, and the Constitution and the Committee were considered to be inoperative. This, we must assume, is what the Tribe wanted. It, as an entity, was the only one directly concerned, and there is nothing to show it was not in favor of the action. Plaintiff has not alleged or otherwise asserted anything to the contrary. Thus again the appellant complains of tribal acts. He names officials as defendants, but complains of tribal acts. This is the basic reason why the complaint presents no

justiciable controversy. The BIA officials acted upon the resolution as indicated above. In so doing, it is obvious that the assertions of arbitrary and capricious action are again directed really to the Tribe. It is obvious that the BIA did not have to take the action it did, but when it is as apparent as it is here as to *why* it acted, we must consider this again as a cause directed against the Tribe itself.

It is apparent from the above that the matter of dispute, the fact of dispute within the Committee, was itself a tribal matter. The stalemate, and its termination, is the only basic issue in the case, and it is not a justiciable subject, issue, or cause. We clearly so held in *National Indian Youth Council v. Bruce,* 485 F.2d 97 (10th Cir.), where the issue was the existence or continuance of a specialized school. The issue here is perhaps somewhat more political in that it concerned the continued operation of an important element of the tribal government. As to the same Band or group as here concerned, see the similar holdings as to intra-tribal disputes, in *Prairie Band of Pottawatomie Tribe of Indians v. Puckkee,* 321 F.2d 767 (10th Cir.), and in *Prairie Band of Pottawatomie Tribe of Indians v. Udall,* 355 F.2d 364 (10th Cir.). This doctrine was probably first enunciated in *Martinez v. Southern Ute Tribe of Southern Ute Reservation,* 249 F.2d 915 (10th Cir.), or in *Wolfe v. Phillips,* 172 F.2d 481 (10th Cir.), and has been followed in *Tewa Tesuque v. Morton,* 498 F.2d 240 (10th Cir.); *Groundhog v. Keeler,* 442 F.2d 674 (10th Cir.); *Dicke v. Cheyenne-Arapaho Tribes, Inc.,* 304 F.2d 113 (10th Cir.); *Native American Church of North America v. Navajo Tribal Council,* 272 F.2d 131 (10th Cir.). In *Motah v. United States,* 402 F.2d 1 (10th Cir.), this court addressed the problem again directly, and the holding is applicable here because again the dispute is really between two factions in the Tribe. *See also Turner v. United States,* 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291. That is where the problem started and the majority of the Committee was able to prevail in inducing action which is here complained of. The issue was intra-tribal because it concerned nothing more than a dispute between factions on the Committee which prevented tribal decisions. This case is thus no different in principle from *Motah v. United States,* and the decision there controls. It serves no purpose to try to categorize these issues or to stuff them into the "sovereign immunity" pigeonhole. The decisions cited above do not do so, and we will not do so here. The cited cases express the scope of a limited doctrine as to what are and what are not justiciable issues for the federal courts in these tribal matters.

The dismissal of the action by the trial court is AFFIRMED for the reasons set forth above.

LEWIS, Chief Judge (concurring).

I concur but confess the case has occasioned me great difficulty. However, I am convinced that the controlling and basic issue started as an intratribal dispute and, despite considerable aggressive action by the B.I.A., did not mushroom to constitutional magnitude during the procedural chaos of reorganization within the Tribe so as to jurisdictionally mandate judicial disapproval of agency action.

Plaintiff's argumentative premise is that the B.I.A., acting arbitrarily and without semblance of authority, violated his personal civil and constitutional rights by dissolving the Business Committee and administratively setting the tribal constitution aside. This premise, at best, could only be termed a self-serving conclusion for it was plaintiff himself as well as his committee members who refused to assemble or function on their appointed duties. The B.I.A. did not create this situation but faced with the reality of a completely nonfunctional tribal government the agency initiated and obtained, through individual polling of the committee members, a majority request to conduct tribal affairs until a new constitution reflecting the tribal wishes could be adopted. Under different circumstances I would, indeed, hold the action of the B.I.A. to be an arbitrary and gross interference with plaintiff's rights as a tribal officer and as a member of the Tribe. But, here, I would term the action as restrained in atti-

tude, in accord with tribal law as far as plaintiff's own action allowed it to be, and dictated by reality to a destructive intratribal dispute. The Tribe itself makes no complaint. Nor can plaintiff complain that his personal right to assemble was denied to him as a member of the committee. This right plaintiff denied to himself.

There is nothing in this record that indicates that the B.I.A. set the tribal constitution aside as a nullity. The agency did withdraw its approval of the constitution, an action that had no legal significance since validity of the constitution was not dependent upon agency approval at its origin nor did withdrawal of agency approval invalidate the constitution in any legalistic way. This action may of course have had considerable practical effect in expediting a new tribal election and the adoption of a new and different constitution, an event that has occurred since this case was submitted to us. If this action by the B.I.A. did have such a practical effect I would not term it arbitrary nor violative of plaintiff's rights.

Since I conclude that we here consider only an intra-tribal dispute, although one of serious magnitude, I agree that the trial court properly dismissed for lack of jurisdiction.